**CENTRAL ILLINOIS LIGHT COMPANY, Plaintiff,**

v.

**CONSOLIDATION COAL COMPANY, Defendant.**

**No. 01–1477.**

United States District Court, C.D. Illinois.

Dec. 30, 2002.

C. Barry Montgomery, David E. Stevenson, Joseph L. Kish, Christina D. Ketcham, Williams Montgomery & John, Ltd., Chicago, IL, William C. Connor, Thomas E. Leiter, Kenneth Ewing Davis, The Leiter Group, Peoria, IL, for Plaintiff.

John R. Pusey, John A. Slevin, Vonachen Lawless Trager & Slevin, Peoria, IL, Charles Weiss, Douglas King, Bryan Cave LLP, St. Louis, MO, for Defendant.

## ORDER

MIHM, District Judge.

Before the Court are two motions for summary judgment—one filed by Consolidation Coal Company (Consol) and one filed by Central Illinois Light Company (CILCO). For the following reasons, Consol's Motion for Summary Judgment [# 14] is GRANTED, and CILCO's Cross–Motion for Partial Summary Judgment on the Issue of the Statute of Frauds [# 29] is DENIED.

### Background

CILCO is an electric utility. Its Edwards Generating Station is a coal-fired power plant. Consol, a subsidiary of CONSOL Energy Inc., is a coal mining company. It has an underground mine in southern Illinois near Rend Lake. In recent years, Consol has sold CILCO some coal from the Rend Lake Mine.

Around September 2000, CILCO and Consol began negotiating a new contract for the supply and purchase of coal for the years 2001 and 2002. The proposed arrangement would have required Consol to supply a certain amount of coal to CILCO's Edwards Station at a fixed price during 2001 and 2002. CILCO alleges that on December 11, 2000, John Bach (Bach)—CONSOL's District Sales Manager—conveyed an oral proposal to Sandy Isbell (Isbell)—CILCO's fuel analyst—for the sale of 1,500,000 tons of coal to CILCO over the two-year period from 2001 to 2002. On December 13, 2000, Isbell sent a letter to Bach summarizing Consol's latest counterproposal as it was understood by CILCO and requesting confirmation from Consol that the summarized terms were correct. There is no written documentation stating that the proposal was confirmed by Consol or accepted by CILCO.

There is a question of fact regarding whether CILCO and Consol entered into an oral agreement in which Consol agreed to sell and CILCO agreed to purchase 1,500,000 tons of coal during the years 2001 and 2002. CILCO alleges that such an oral agreement was reached during a telephone conference between Bach and Isbell on December 14, 2000. Consol denies that it entered into an oral agreement, contending instead that Bach and Isbell merely discussed Consol's latest proposal as a "good starting point."

From January through April, 2001, Bach and Isbell exchanged numerous emails and draft contracts, participated in multiple telephone conferences, and met in person to discuss the proposed written contract. During that time, Consol sold to CILCO 361,798 tons of coal from its Rend Lake Mine at the price of $22.75 per ton—the price consistently agreed to in the draft contracts exchanged between CILCO and Consol. In May 2001, Consol ceased selling coal to CILCO, and discontinued its negotiations with CILCO. The parties never entered into a written agreement for the sale of coal.

CILCO filed a breach of contract suit against Consol on November 28, 2001. On April 26, 2002, Consol filed a motion for

summary judgment, arguing that the alleged contract fails to meet the requirements of the statute of frauds under 810 ILCS 5/2–201. On August 5, 2002, CILCO filed a cross-motion for partial summary judgment on the issue of the statute of frauds. This Order follows.

### Discussion

### I. Standard of Review

A motion for summary judgment will be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The moving party may meet its burden of showing an absence of material facts by demonstrating "that there is an absence of evidence to support the non-moving party's case." *Id.* at 2553. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Cain v. Lane,* 857 F.2d 1139, 1142 (7th Cir.1988).

If the moving party meets its burden, the non-moving party then has the burden of presenting specific facts to show that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). Federal Rule of Civil Procedure 56(e) requires the non-moving party to go beyond the pleadings and produce evidence of a genuine issue for trial. *Celotex Corp.,* 106 S.Ct. at 2553. This Court must then determine whether there is a need for trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party. *Anderson,* 106 S.Ct. at 2511; *Hedberg v. Indiana Bell Tel. Co.,* 47 F.3d 928, 931 (7th Cir.1995).

### II. Statute of Frauds

Under 810 ILCS 5/2–201(1),

> [A] contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under the paragraph beyond the quantity of goods shown in such writing.

A contract for the sale of coal is a contract for the sale of goods under the Illinois Uniform Commercial Code. *See* 810 ILCS 5/2–107.

Comment 1 to section 2–201 establishes "three definite and invariable requirements" regarding the writing required under 2–201(1):(a) the writing "must evidence a contract for the sale of goods;" (b) the writing must be " 'signed,' a word which includes any authentication which identifies the party to be charged;" and (c) the memorandum "must specify a quantity." 810 ILCS 5/2–201, cmt. 1.

Comment 1 also clarifies the writing that is required:

> The required writing need not contain all the material terms of the contract and such material terms as are stated need not be precisely stated. All that is required is that the writing afford a basis for believing that the offered oral evidence rests on a real transaction.... The only term which must appear is the quantity term which need not be accurately stated but recovery is limited to the amount stated. The price, time and

place of payment or delivery, the general quality of the goods, or any particular warranties may all be omitted. *Id.; see also Monetti, S.P.A. v. Anchor Hocking Corp.*, 931 F.2d 1178, 1181 (7th Cir.1991) ("The UCC statute of frauds ... requires no more than written corroboration of the alleged oral contract."). Internal documents, invoices and emails can be used to satisfy the Illinois UCC statute of frauds. *See* 810 ILCS 5/2–201, cmt. 6 ("It is not necessary that the writing be delivered to anybody."); *Monetti, S.P.A.*, 931 F.2d at 1185 (holding that an internal memorandum on company letterhead could satisfy the Illinois UCC statute of frauds); *Automotive Spares Corp. v. Archer Bearings Co.*, 382 F.Supp. 513 (N.D.Ill.1974) (finding that an invoice containing quantity designations and price terms, sent on company letterhead, satisfied the Illinois UCC statute of frauds); *Commonwealth Aluminum Corp. v. Stanley Metal Ass'n*, 186 F.Supp.2d 770, 774 (W.D.Ky.2001) (holding that an email satisfied the UCC statute of frauds).

As the for the signature requirement, the Illinois UCC defines the word "signed" as including "any symbol executed or adopted by a party with present intention to authenticate a writing." 810 ILCS 5/2–201. Thus, "a complete signature is not necessary." 810 ILCS 5/2–201, cmt. 39. In some instances, a typed name or letterhead on a document is sufficient to satisfy the signature requirement. *Monetti S.P.A.*, 931 F.2d at 1185.

Alternatively, a writing may qualify under the "merchant's exception" of the UCC:

Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given 10 days after it is received.

810 ILCS 5/2–201(2). Like section 2–201(1), section 2–201(2) requires the writing to state a quantity term and indicate that a contract for sale has been made; however, it need not be signed by the party to be charged. *See Howard Const. Co. v. Jeff–Cole Quarries, Inc.*, 669 S.W.2d 221, 227 (1983) (citing UCC § 2–201(2)). It need only be signed by the sender. *See id.*

### III. Consol's Internal Documents

CILCO argues that Consol's internal documents procured from its "Coal Sales Invoicing System" (the CSIS documents) satisfy the statute of frauds. The Seventh Circuit has found that an internal document, even if it is never distributed outside the company, can satisfy the Illinois UCC statute of frauds. *Monetti S.P.A.*, 931 F.2d at 1185.

The document that comes closest to satisfying the statute of frauds is contained in Exhibit D to Plaintiff's Statement of Facts. By its heading entitled "Contract Specifications," under which appear "Type of Contract," "Contract Tonnage," and "Contract Values," the document indicates that a contract for the sale of coal has been made. It also identifies CILCO as the buyer and Consol as the seller on pages 1 and 3 of the report. While it is true that several of the CSIS documents submitted by CILCO appear to relate to transactions that occurred in 1997, Exhibit D lists the "Order Effective Date" as 12/01/2000, which is around the time when CILCO allegedly entered into an oral contract with Consol.[1]

CILCO contends that Isbell entered into an oral contract with Bach on December

---

1. Page 3 of Exhibit D also lists an effective date of January 1, 2001, which appears to

14, 2002. Plaintiff's Memorandum of Law p. 3. Although the "Order Effective Date" on Exhibit D is not exactly consistent with the contract date alleged by CILCO, comment 1 to section 2–201 makes it clear that the only term which must appear in the writing is the quantity term, "which need not be accurately stated." 810 ILCS 5/2–201, cmt. 1. Therefore, Exhibit D on its face corroborates CILCO's allegation that CILCO and Consol entered into an oral contract for the sale of coal in December 2000. *See id.*

The document contained in Exhibit D, however, fails to satisfy the signature requirement imposed by section 2–201. Consol is correct in arguing that the Court must disregard the Isbell affidavit as well as the deposition testimony of John Bach regarding how data is entered into the CSIS program and who uses it at Consolidation, because oral evidence is "inadmissible on the question whether the documents meet the requirements of the statute of frauds." *Monetti S.P.A.*, 931 F.2d at 1182.

Page 5 of the report shows that it was "created" and "set to review" by a person named Debbie Womack, and "released to the system" by a person named Beverly Wilson. The report, however, does not identify these two individuals as employees or authorized agents of Consol, and parol evidence may not be considered on this issue. *Smith Packing Co. v. Quality Pork Int'l, Inc.*, 167 A.D.2d 875, 561 N.Y.S.2d 970, 971 (N.Y.App.Div.1990) (holding that the notation "Confirmed … with Laura Lee" did not satisfy the signature requirement of the statute of frauds because the document itself did not identify who Laura Lee was or establish that she was an agent of the defendant); *R.M. Schultz & Associates, Inc. v. Nynex Computer Services Co.*, 1994 WL 124884 (N.D.Ill.1994) (agreeing with *Smith Packing* court that parol evidence may not be considered in identifying an entity as an agent of the defendant).

In a telephone hearing held on December 27, 2002, CILCO argued that the Seventh Circuit does not require the document itself to identify the authenticating individuals as employees or agents of Consol. In *Monetti*, Judge Posner stated that the legend "SS/mh" was sufficient to satisfy the statute of frauds. *Monetti S.P.A.*, 931 F.2d at 1180. He concluded that "SS" referred to Steven Schneider, and noted parenthetically that Steven Schneider was an authorized representative of the defendant. *See id.* at 1180, 1182. It is not clear, however, whether the Court gleaned this information from the document itself, or from parol evidence. The Court described in some detail the memo on which the legend appeared, but never indicated that the memo identified "SS" as Steven Schneider. *Id.* at 1180. Thus, it appears that the Court may have relied on parol evidence for this purpose. Based on this inference, CILCO argues that oral testimony is admissible to identify Beverly Wilson and Debbie Womack as authorized representatives of Consol.

Even if this Court were to accept CILCO's argument, there is no parol evidence in this case indicating that Beverly Wilson or Debbie Womack were employees of Consol with authority to bind the company.[2] In *Monetti*, the initials that were

---

denote when the price rate of $22.75 per ton will commence.

**2.** In his deposition, John Bach testified that the CIS documents were prepared either by him or under his supervision and control, and identified two individuals by the names of Donna Harris and Geri Campton as employ-ees of Consol. Bach Dep. at 133, 135, 143. Robert Pusateri also identified Donna Harris and Geri Campton in his deposition. Pusateri Dep. at 121, 127. There is no evidence, however, identifying Debbie Womack and Beverly Wilson or indicating that they were authorized representatives of Consol.

found to satisfy the statute of frauds belonged to an owner of the business. *See id.* at 1179. Since there is no basis in the record for finding that Beverly Wilson or Debbie Womack had authority to sign for Consol, and since there is no indication that the data entered by the two women was ever confirmed by an authorized representative, even parol evidence would not save the CSIS document at issue from the statute of frauds.

More fundamentally, this Court finds that under *Smith Packing Co., R.M. Schultz & Associates, Inc.,* and the true spirit of *Monetti,* parol evidence may not be considered on the issue of whether the authenticating individuals were employees or authorized agents of Consol. The Seventh Circuit made clear in *Monetti* that "[t]he use of oral evidence to get round the requirement of a writing would be bootstrapping, would sap the statute of frauds of most of its force, and is therefore forbidden." *Id.* at 1181. Although it appears that the *Monetti* Court may have skirted this rule itself in determining that a set of initials belonged to Steven Schneider, the Court ultimately relied on an entirely different document to satisfy the statute of frauds. *See id.* at 1185. This second document was printed on the defendant company's letterhead, and thus satisfied the statute of frauds' signature requirement without needing to rely on parol evidence. *Id.*

In sum, nothing on the face of the documents themselves indicates that they were created, initialed, dictated, signed, or otherwise authenticated by anyone at Consolidation Coal Company. Therefore, the CSIS documents fail to satisfy the signature requirement of the statute of frauds.

## IV. Bach's Emails

CILCO next argues that several emails sent by Consol to CILCO on February 7, 2001; March 16, 2001; April 24, 2001 and April 25, 2001 satisfy the statute of frauds. Plaintiff's Memorandum of Law p. 12; *see* Isbell Aff. Ex.s 13, 15–17. These emails, however, clearly indicate that the parties were negotiating, and thus do not corroborate Isbell's testimony that an oral contract was made on December 14, 2000. *See Monetti S.P.A.,* 931 F.2d at 1182 (holding that a precontractual writing relating to a negotiating session does not satisfy the statute of frauds, "lest a breakdown of contract negotiations become the launching pad for a suit on an alleged oral contract"). CILCO argues that because the parties' emails always contained the same terms regarding quantity, price, duration and quality, they corroborate CILCO's allegation that an oral contract as to these terms had already been made. Even if the parties had the same quantity, price, duration and quality terms in mind during negotiating sessions, however, this does not constitute evidence that a contract as to these terms had already been made. The statute of frauds provides that the writing "must evidence a contract for the sale of goods." 810 ILCS 5/2–201, cmt. 1. Agreement on a few terms—even if they are key terms—during negotiations does not "evidence a contract."

The first email on which CILCO relies, sent by Bach to Isbell on February 7, 2001, states that the attached contract "looks great for a starting point." Isbell Aff. Ex. 13. It goes on to state, "I have made some suggested changes which are always open to discussion.... It will not take long to finalize things." *Id.* This language clearly fails to indicate that a contract had already been made.

The email sent by Bach to Isbell on March 16, 2001 includes an email that circulated around Consolidation Coal Company on March 12, 2001. Isbell Aff. Ex. 15. Bach sent both messages to Isbell and stated that the information therein was

"[f]or further discussion." *Id.* Once again, this language fails to indicate that a contract had already been made. In fact, the message that circulated around Consolidation Coal Company on March 12, 2001 posed a question as to whether the company should allow CILCO "a +/10% annual quantity option." *Id.* By indicating that the quantity term was still negotiable, this evidence directly contradicts CILCO's assertion that the parties had already entered into an oral contract governing quantity on December 14, 2000.

Similarly, the email sent by Bach to Isbell on April 25, 2001 states that the attached contract "is the latest Draft Agreement incorporating all of the changes discussed on 4/24/01." Isbell Aff. Ex. 17. It specifically lists "Tonnage and Term" and "Coal Quality" as "primary issues to resolve." *Id.* Consol changed the quantity term in the attached contract so that the total tonnage over the course of two years was 1,590,000 tons instead of 1,500,000 tons with the *option* of adding 90,000 tons as it was before. *Id.* Thus, rather than corroborating CILCO's testimony that the parties already had an oral agreement as to these terms, the emails on which CILCO relies directly contradict this allegation.

Finally, the email sent by Bach to Isbell on April 24, 2001 merely forwards a message from the manager of Market Development at CONSOL Energy Inc. outlining general comments and concerns regarding the draft contract. Isbell Aff. Ex. 16. Like the others, this email contains no language that would lead to an inference that a contract already existed.

In sum, none of the emails sent by Bach to Isbell in the early months of 2001 satisfy the statute of frauds. Furthermore, none of the emails or CSIS documents are "so connected, either physically or otherwise, as to show by internal evidence that they relate to the same contract." *West-*

*ern Metals Co. v. Hartman Ingot Metal Co.*, 303 Ill. 479, 135 N.E. 744, 745 (1922). The CSIS documents indicate a contract for the sale of 1,500,000 tons of coal, while the emails indicate a tentative contract for the sale of 1,590,000 tons of coal. They do not expressly reference each other, they were never physically connected, and to the extent they contain conflicting terms, they do not really make sense when read together. Unlike the two cases cited by CILCO on page 13 of its Reply brief, the two sets of documents in this case do not contain the same specific details. *See Jones v. Olsen*, 80 Ill.App.3d 1016, 36 Ill. Dec. 245, 400 N.E.2d 665, 667 (1980); *Shugan v. Colonial View Manor*, 107 Ill. App.3d 458, 63 Ill.Dec. 82, 437 N.E.2d 731, 737 (1982). Therefore, they cannot be considered together when determining whether they satisfy the statute of frauds.

## V. CILCO's February 22, 2001 Email

As a last attempt, CILCO argues that the email sent by Isbell to Bach on February 22, 2001 satisfies the merchant's exception to the statute of frauds. *See* 810 ILCS 5/2–201(2); *supra* p. 5. The email contains the heading "CONSOL CONTRACT," followed by a list of months and numbers. Isbell Aff. Ex. 19. It also contains a small note that says, "John, Feb and March reflect original schedule." *Id.*

The Court finds that this email is insufficient to satisfy the requirements of the merchant's exception. First, it contains no explanation of the alleged contract whatsoever. It merely contains a list of months and numbers. While CILCO may find it "obvious" that "the numbers in the email . . . reference tons of coal to be delivered by CONSOL to CILCO during 2001," the Court does not find it so obvious, especially considering the email does not even mention the word "coal" or the year 2001. Second, the email is not sufficient to bind

the sender. 810 ILCS 5/2–201(2). It says nothing about any obligation of CILCO to receive or pay for anything. Therefore, the February 22, 2001 email does not satisfy the merchant's exception to the statute of frauds.

### Conclusion

For the foregoing reasons, Consol's Motion for Summary Judgment [# 14] is GRANTED, and CILCO's Cross–Motion for Partial Summary Judgment on the Issue of the Statute of Frauds [# 29] is DENIED.

Consol's Motion for Leave to File Supplemental Brief [# 39] is DENIED. The Court finds that CILCO's Reply in Support of Its Cross–Motion for Partial Summary Judgment was properly filed, and therefore denies permission to Consol to file a supplemental memorandum in response to CILCO's Reply. *See* Local Rule 7.1.

This matter is terminated.