**ROGER EDWARDS, LLC, Plaintiff**

v.

**FIDDES & SON, LTD., Defendant**

**No. 02–105–P–DMC.**

United States District Court,
D. Maine.

Feb. 14, 2003.

Thomas F. Hallett, Portland, ME, for Roger Edwards LLC, Plaintiff.

David Soley, Bernstein, Shur, Sawyer, & Nelson, Portland, ME, for Fiddes & Son Ltd, Defendant.

## *MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND ORDER TO SHOW CAUSE*[1]

DAVID M. COHEN, United States Magistrate Judge.

The defendant, Fiddes & Son, Ltd., moves for summary judgment on the plaintiff's complaint and on two of the four counts of its counterclaim in this contract action that has been removed to this court from the Maine Superior Court (Androscoggin County). I grant the motion in part and order the defendant to show cause why the remaining two counts of the counterclaim should not be dismissed.

### I. Applicable Legal Standard

Summary judgment is appropriate only if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In this regard, 'material' means that a contested fact has the potential to change the outcome of the suit under the governing law if the dispute over it is resolved favorably to the nonmovant. By like token, 'genuine' means that 'the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party.'" *Navarro v. Pfizer Corp.*, 261 F.3d 90, 93–94 (1st Cir.2001) (quoting *McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Nicolo v. Philip Morris, Inc.*, 201 F.3d 29, 33 (1st Cir.2000). Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir.1999) (citation and internal punctuation omitted); Fed.R.Civ.P. 56(e). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir.2001) (citation and internal punctuation omitted).

### II. Factual Background

The following undisputed material facts are appropriately presented and supported in the parties' respective statements of

---

1. Pursuant to 28 U.S.C. § 636(c), the parties have consented to have United States Magistrate Judge David M. Cohen conduct all proceedings in this case, including trial, and to order the entry of judgment.

material facts submitted pursuant to this court's Local Rule 56.

The plaintiff is a Maine limited liability company[2] with a principal place of business in Auburn, Maine. Defendant's Statement of Material Facts Not in Dispute, etc. ("Defendant's SMF") (Docket No. 22) ¶ 1; Plaintiff's Opposing Statement of Material Facts ("Plaintiff's Responsive SMF") (Docket No. 29) ¶ 1. The defendant is a British corporation with a principal place of business in Cardiff, Wales. *Id.* ¶ 2. Larry Mann, manager of the plaintiff, is a distributor of Briwax wood care products with an exclusive distributorship in six states. Plaintiff's Statement of Material Facts in Dispute ("Plaintiff's SMF") (Docket No. 30) ¶¶ 1–2; Defendant's Reply to Plaintiff's Statement of Additional Facts in Dispute ("Defendant's Responsive SMF") (Docket No. 33) ¶¶ 1–2.

The plaintiff alleges that it entered into an agreement with the defendant on August 7, 2000 to give the plaintiff exclusive rights to market and distribute the defendant's products in a territory that included 34 states. Defendant's SMF ¶ 3; Plaintiff's Responsive SMF ¶ 3. The alleged agreement did not have a specific termination date and was not for a specific duration. *Id.* ¶ 4. The plaintiff did not ask for a written contract setting forth this agreement. *Id.* ¶ 6. The plaintiff claims that the parties expected to continue to do business indefinitely as long as they complied with the spirit of the agreement and sales volume grew to their satisfaction. *Id.* ¶ 5. The evidence of the existence of the agreement on which the plaintiff relies is a series of e-mails between Mann and Robert Fiddes Gooding of the defendant.[3] *Id.* ¶¶ 7–13. During the period in which the plaintiff alleges that this agreement was in existence, the defendant sold its products directly into the territory that the plaintiff contends was covered by the agreement. Plaintiff's SMF ¶ 39; Defendant's Responsive SMF ¶ 39.

Beginning on September 4, 2000 the defendant sold goods to the plaintiff. Defendant's SMF ¶ 14; Plaintiff's Responsive SMF ¶ 14. By October 2001 relations between the parties became strained. Plaintiff's SMF ¶ 22; Defendant's Responsive SMF ¶ 22. On November 17, 2001 Mann wrote to Gooding seeking a letter of agreement for "inventory financing" which Mann said he needed to provide to his banker in order to obtain financing to pay all bills. Defendant's SMF ¶ 22; Plaintiff's Responsive SMF ¶ 22. On November 19, 2001 Mann wrote to Gooding and stated, in part: "I have to assume that by your refusal to provide a letter of agreement, you do realize it is over. Period. [T]oday for that matter, we are done." *Id.* ¶ 23. Some time after sending this e-mail, Mann placed a further order with the defendant. Plaintiff's SMF ¶ 28; Defendant's Responsive SMF ¶ 28. Gooding wrote to Mann on November 21, 2001 outlining the two e-mails that reflected Mann's termination of the parties' relationship and accepting that termination. Defendant's SMF ¶ 27; Plaintiff's Responsive SMF ¶ 27. He stated that the defendant would not respond

2. Neither of the parties specifies in its statement of material facts the relationship between Larry Mann and the corporate plaintiff. In an affidavit submitted in support of the plaintiff's statement of material facts, Mann states that he is the manager and registered agent of the plaintiff. Affidavit of Larry Mann (docket No. 31) ¶ 1. From all that appears in the summary judgment record, Mann's description of his position with the plaintiff is not disputed.

3. Gooding's position with the defendant is not specified in either party's summary judgment submissions. The parties assume that Gooding had the power to bind the defendant and I will proceed on the basis of that assumption.

to further requests about the relationship or its termination until the plaintiff's account was paid. *Id.* On December 12, 2001 the defendant requested a wire transfer for the outstanding balance on the plaintiff's account. *Id.* ¶ 32. On that date, Mann replied "There will be no further payments to your firm. We are exercising our right of off set to a breach of contract." *Id.* ¶ 33. The plaintiff owes the defendant £11,794.24 for goods sold to the plaintiff between July 11, 2001 and November 1, 2001. *Id.* ¶ 37.[4]

The plaintiff claims that the alleged agreement was terminated by the defendant on January 18, 2002 through the defendant's attorney. *Id.* ¶ 34.

## III. Discussion

### A. Existence of a Contract

The complaint alleges breach of contract (Count I) and seeks specific performance (Count II) as well as money damages. Complaint, attached to Notice of Removal (Docket No. 1), at 1–2. The defendant contends that no contract existed because there was no meeting of the minds on the material terms; that the alleged contract is unenforceable under Maine's statute of frauds; that the plaintiff breached the agreement, if it existed; that the plaintiff terminated any agreement on November 20, 2001; and that the defendant terminated any agreement with sufficient notice. Defendant's Motion for Summary Judgment, etc. ("Motion") (Docket No. 21) at 5–13. The plaintiff responds that the question whether a meeting of the minds occurred may only be resolved at trial; that there is a triable issue on the question of the application of the statute of frauds, including whether the Uniform Commercial Code statute of frauds or the general Maine statute of fraud applies to this dis-

pute; that application of the statute of frauds is barred by its part performance; and that material factual disputes exist concerning termination of the alleged contract. Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("Opposition") (Docket No. 28) at 6–17.

To the extent that the plaintiff means to argue that the question of the existence of a contract may never be decided on a motion for summary judgment but rather must always be submitted to the finder of fact at trial, it is incorrect. The case law cited by the plaintiff in support of this proposition, *June Roberts Agency, Inc. v. Venture Props., Inc.*, 676 A.2d 46, 48 (Me.1996), and *Agway, Inc. v. Ernst*, 394 A.2d 774, 777 (Me.1978), does not so hold. The court may, and indeed must, always decide, when a motion for summary judgment is filed, whether there exists sufficient disputed material evidence to allow a factfinder to determine whether a contract existed at the relevant time. *See, e.g., Stanton v. University of Maine Sys.*, 773 A.2d 1045, 1050–51 (Me.2001) (upholding summary judgment that no contract existed); *Searles v. Trustees of St. Joseph's College*, 695 A.2d 1206, 1211–12 (Me. 1997) (same). It is the parties' factual submissions in connection with each particular motion for summary judgment that provide the basis for the court's determination on that point.

The parties do not contend that any law other than that of Maine applies to the determination of the question whether a contract existed in this case. Under Maine law,

> [t]o establish a legally binding agreement between parties, the mutual assent to be bound by all its material terms

***

4. The counterclaim states that this amount represented $17,286 at the time the counter-claim was filed. Answer and Counterclaim (Docket No. 6), Counterclaim ¶¶ 1, 11.

must be reflected and manifested either expressly or impliedly in the contract and the contract must be sufficiently definite to enable a court to determine its exact meaning and fix any legal liability of the parties.

*Smile, Inc. v. Moosehead Sanitary Dist.,* 649 A.2d 1103, 1105 (Me.1994). While there is evidence in the exchange of e-mails between Mann and Gooding that the parties anticipated further negotiations over terms after August 7, 2000,[5] the date on which the plaintiff contends that the contract came into existence, it is not possible to conclude as a matter of law that any of these terms were material. The defendant cites *Ryan v. Wersi Elecs. GmbH & Co.,* 3 F.3d 174 (7th Cir.1993), and *G.R. Toghiyany v. AmeriGas Propane, Inc.,* 309 F.3d 1088 (8th Cir.2002), Defendant's Reply to the Plaintiff's Objection to the Defendant's Motion for Summary Judgment ("Reply") (Docket No. 34) at 3–4, in support of its contentions that sales quotas and durational terms are essential material elements of a distributorship contract, but those opinions construe Illinois and Missouri law, respectively, and are not applicable to a claim governed by Maine law. The parties cite no Maine statutory or case law that suggests that such terms are required in the alleged contract at issue, and my research has located none. Accordingly, although the question is a close one, judgment for the defendant as a matter of law is not appro-

priate on the basis of indefiniteness of terms or a lack of meeting of the minds.[6]

**B. The Statutes of Frauds**

Under Maine law,

[n]o action shall be maintained . . .

&ast; &ast; &ast; &ast; &ast; &ast;

5. **Agreement not to be performed within one year.** Upon any agreement that is not to be performed within one year from the making thereof . . .

&ast; &ast; &ast; &ast; &ast; &ast;

unless the promise, contract or agreement on which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith, or by some person thereunto lawfully authorized . . . .

33 M.R.S.A. § 51. The defendant contends that the plaintiff's own allegations demonstrate that the agreement at issue was to continue indefinitely and would not conclude within a year and that there was no written agreement and no signature on its behalf. Motion at 8–9. The plaintiff responds that the Maine statute of frauds quoted above does not apply to the transaction at issue, but rather the statute of frauds created by the Uniform Commercial Code ("UCC"); that there is a factual issue concerning which statute of frauds is applicable which can only be resolved at trial; that the e-mails between Mann and Fiddes Gooding satisfy the writing requirement of either statute of frauds; that

---

5. *E.g.,* "It has been mentioned also that for protected territory rights and a distributorship you would want to do a trial. . . . So I have no problems with the time limit, but what are the guidelines for pass fail?," Defendant's SMF ¶ 9, Plaintiff's Responsive SMF ¶ 9; "We would require a stringent retail pricing structure . . . . We would work together to establish a retail web site . . . . We would endeavor to set realistic goals over a 1 year period . . . ." *id.* ¶ 10; "Are resources and resume of importance? What criteria are you

looking at?," *id.* ¶ 11. No other e-mails in the summary judgment record dated August 7, 2000 or before address these issues or terms.

6. Particularly significant in this regard is the statement in Gooding's August 7, 2000 e-mail to Mann that "I . . . am pleased to grant territorial rights to those states requested." Plaintiff's SMF ¶ 13; Defendant's Responsive SMF ¶ 13.

an alleged "oral admission" by Fiddes Gooding at deposition that an oral contract existed precludes application of either statute of frauds; and that the agreement could have been performed within one year. Opposition at 8–12, 13.

■ The plaintiff's final argument is without merit. Under Maine law, the fact that the contract at issue could conceivably have been performed within one year is not determinative. Rather, the court must consider all of the factual circumstances; if the parties plainly manifested an intent that the contract was not to be performed within one year, the contract falls within the statute of frauds set forth at 33 M.R.S.A. § 51. *Great Hill Fill & Gravel, Inc. v. Shapleigh*, 692 A.2d 928, 929–30 (Me.1997); *see generally Larson v. Johnson*, 184 F.Supp.2d 26, 33 (D.Me.2002); *Marshall v. Lowd*, 154 Me. 296, 147 A.2d 667, 672 (1958). That is the case here; the plaintiff has offered no evidence that could allow a factfinder to draw a reasonable inference other than that the parties manifested an intent that the alleged contract was not to be performed within one year. The one-year requirement is not an element of the UCC statute of frauds, and accordingly this discussion is not applicable if I determine that the UCC version applies in this case.

■ The UCC statute of frauds adopted in Maine provides, in relevant part:

(1) Except as otherwise provided in this section, a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker.... [T]he contract is not enforceable under this subsection beyond the quantity of goods shown in such writing.

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within 10 days after it is received.

(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

\* \* \* \* \* \*

(b) If the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contact for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted ....

11 M.R.S.A. § 2–201.

Courts have differed on the question whether a distributorship agreement, which is the nature of the contract at issue here, is governed by the UCC statute of frauds.[7] *See, e.g., Monetti, S.P.A. v. Anchor Hocking Corp.*, 931 F.2d 1178, 1184 (7th Cir.1991) (listing cases); *Lorenz Supply Co. v. American Standard, Inc.*, 419 Mich. 610, 358 N.W.2d 845, 847 (1984) (same). This court declined to resolve the question in *Maine Surgical Supply Co. v.*

---

7. Contrary to the plaintiff's contention, this issue is very much one which may be decided by the court before trial. *See, e.g., United Beer Distrib. Co. v. Hiram Walker (N.Y.) Inc.*, 163 A.D.2d 79, 557 N.Y.S.2d 336, 337–38 (N.Y.App.Div.1990)(finding without merit claim that § 2–201(2) applied to oral agreement in review of appeal from denial of summary judgment).

*Intermedics Orthopedics, Inc.*, 756 F.Supp. 597, 601–02 (D.Me.1991), because the defendant, the party moving for summary judgment, did not meet its burden to produce undisputed evidence that the alleged contract was one for the sale of goods, which would be subject to the UCC, rather than one for the provision of services, which would not be subject to the UCC, because draft contracts in the summary judgment record could reasonably be interpreted to concern the provision of services rather than the sale of goods.[8] In the present case, the plaintiff takes the position that the alleged contract is subject to the UCC, Opposition at 8–9, and the defendant responds that the evidence in the summary judgment record can only reasonably be interpreted to show that the alleged contract was one for the provision of services, not for the sale of goods, and thus outside the scope of the UCC, Reply at 2–5. I agree.

▮ Here, the evidence establishes that (i) the plaintiff alleges that the parties entered into an agreement to give the plaintiff "the exclusive right[ ] to market and distribute [the defendant's] products" in a certain territory, Defendant's SMF ¶ 3; Plaintiff's Responsive SMF ¶ 3; (ii) the plaintiff did not ask for a written contract and did not know whether the defen-

dant was willing to enter into a signed agreement, *id.* ¶ 6;[9] (iii) the e-mails between Mann and Gooding refer repeatedly to marketing and distribution of Fiddes products, but never to specific amounts of those products, *id.* ¶¶ 8–12, 15, 18–20 and Plaintiff's SMF ¶¶ 7–11, Defendant's Responsive SMF ¶¶ 7–11; and (iv) the plaintiff claims that it set up distribution and marketing networks as a result of the alleged contract and that Mann "spent between 50 and 60 thousand dollars in purchasing Fiddes products for distribution," Plaintiff's SMF ¶¶ 20–21. The plaintiff also asserts that Gooding "acknowledged, at deposition, that there was an agreement for the sale of goods and that Plaintiff was granted territorial rights," Opposition at 10, as the basis for its contention that 11 M.R.S.A. § 2–201(3)(b) applies to its claims. However, the pages of Gooding's deposition cited in the plaintiff's memorandum are not cited in its statement of material facts—indeed, the plaintiff did not provide the court with a copy of any of the pages of that deposition—and accordingly they may not provide the basis for its argument. Even if that omission were not dispositive as to this argument,[10] subsections 1 and 3(b) of the Maine version of the UCC statute of frauds provide that any such contracts are not enforceable beyond

8. The plaintiff asserts that the First Circuit in *Gestetner Corp. v. Case Equip. Co.*, 815 F.2d 806 (1st Cir.1987), "determined that an 'oral distributorship contract' fell within the U.C.C. and, therefore, subject [sic] to § 2–201." Opposition at 9. To the contrary, there is no indication in the opinion in that case that the question whether the UCC statute of frauds was applicable was ever raised; the only issue addressed by the court was whether the evidence presented at trial established the elements of 11 M.R.S.A. § 2–201(3)(b). *Id.* at 808–09.

9. The plaintiff contends that "the emails constitute a binding written agreement, and in that respect, Plaintiff did 'ask' for a written

contract." Plaintiff's Responsive SMF ¶ 6. Nothing in the e-mails reproduced in the summary judgment record can reasonably be construed as a request by the plaintiff for a written contract; whether the e-mails constituted such a thing is an entirely different question.

10. The assertion also mischaracterizes Gooding's testimony. Telephonic Deposition of: Robert Fiddes Gooding (excerpts attached to Defendant's Responsive SMF as Exh. A) at 23–25. Neither party has provided the court with a copy of page 19 of this deposition, which is cited in the plaintiff's memorandum. Opposition at 10.

the quantity of goods shown or admitted. Gooding's testimony "admits" no quantity at all, nor do any of the e-mails "show" any quantity.

In an effort to overcome this lack of evidence, the plaintiff argues that the agreement was one for "exclusive dealings" governed by section 2–306 of the UCC, making specification of a quantify unnecessary. Opposition at 11. That statute provides, in relevant part:

> A term which measures the quantity by the output of the seller or the requirements of the buyer means such actual output or requirements as may occur in good faith, except that no quantity unreasonably disproportionate to any stated estimate or in the absence of a stated estimate to any normal or otherwise comparable prior output or requirements may be tendered or demanded.

11 M.R.S.A. § 2–306(1).[11] None of the e-mails in the summary judgment record can reasonably be interpreted to show an agreement by the plaintiff to purchase or distribute all of the defendant's output of any product. To the extent that the plaintiff means to contend that the alleged agreement was a requirements contract, by which the defendant agreed to supply all of the plaintiff's needs for its products, the evidence cannot be interpreted to establish that alternative either. Under the UCC, "[a]n essential element of a requirements contract is the promise of the buyer to purchase exclusively from the seller either the buyer's entire requirements or up to a specified amount." *Merritt–Campbell, Inc. v. RxP Prods., Inc.*, 164 F.3d 957,

963 (5th Cir.1999). "A requirements contracts is a contract that, although it does not establish the amount that a buyer must purchase from the seller, prohibits the buyer from purchasing from other sellers." *Id. See also Zayre Corp. v. S.M. & R. Co.*, 882 F.2d 1145, 1154–55 (7th Cir. 1989); *Eastern Dental Corp. v. Isaac Masel Co.*, 502 F.Supp. 1354, 1364 (E.D.Pa. 1980). The evidence in the summary judgment record would not allow a factfinder reasonably to conclude that either of these terms is found in the e-mails. *See Simmons Foods, Inc. v. Hill's Pet Nutrition, Inc.*, 270 F.3d 723, 726–27 (8th Cir.2001) (exception for requirements contract not applicable where alleged contract totally silent as to quantity).

The plaintiff's final argument concerning application of the UCC is that the defendant's failure to respond to Mann's August 7, 2000 e-mail within ten days satisfies 11 M.R.S.A. § 2–201(2). Opposition at 10. However, a contract subject to the UCC created in the manner specified by subsection 2 still would not be enforceable beyond the quantity of goods shown in the writing. *Gestetner*, 815 F.2d at 810. *See also Central Illinois Light Co. v. Consolidation Coal Co.*, 235 F.Supp.2d 916, 2002 WL 31889299 (C.D.Ill.2002), at [3]. The gaps in the evidence discussed above are thus fatal to this argument as well.

My analysis accordingly turns to the general Maine statute of frauds set forth in 33 M.R.S.A. § 51. The defendant contends that it "never provided a written agreement, never signed a written agree-

---

**11.** The only reference to "exclusive dealing" in section 2–306 occurs in subsection 2, but that subsection only imposes an obligation by the seller to use best efforts to supply the goods and by the buyer to use best efforts to promote their sale, neither of which is relevant to the plaintiff's argument that the UCC applies to the contract at issue here. The case cited by the plaintiff in support of its argument, *Advent Sys. Ltd. v. Unisys Corp.*, 925 F.2d 670 (3d Cir.1991), makes clear that the exclusive contracts that satisfy the quantity requirements of the statute of frauds are exclusive *requirements* or *output* contracts, *id.* at 678.

ment and [the plaintiff] claims that it never asked for a written contract." Motion at 9. It concludes that the alleged agreement is accordingly unenforceable under section 51. *Id.* The plaintiff responds that the e-mails "clearly constitute a writing, and the fact that the party to be charged with enforcement, Fiddes, and specifically its authorized agent Robert Fiddes Gooding authored emails with his salutation [sic] is sufficient to constitute a signature." Opposition at 11. The defendant does not reply to this argument.

 Under Maine law, "a series of writings may collectively satisfy the requirements of the Statute of Frauds." *Wilson v. DelPapa,* 634 A.2d 1252, 1254 (Me.1993). The defendant admits that Gooding wrote the e-mails attributed to him. Defendant's SMF ¶¶ 8, 10, 12, 18, 20, 24, 26–27; Plaintiff's SMF ¶¶ 10, Defendant's Responsive SMF ¶ 10.[12] The only questions, therefore, are whether e-mails are sufficient writings under section 51 and whether an e-mail can fulfill the statutory requirement of a signature. Neither appears to have been answered to date by the Maine Law Court. Courts in other jurisdictions have held that e-mails satisfy the writing and signature requirements of statutes of frauds. *E.g., Cloud Corp. v. Hasbro, Inc.,* 314 F.3d 289, 295–96 (7th Cir.2002); *Central Illinois Light,* 235 F.Supp.2d 916, 919 (Illinois law, citing cases). *But see G.R. Toghiyany,* 309 F.3d at 1091 (stating, without discussion, that e-mails are not "signed" for purposes of Missouri statute of frauds). Maine common law has long recognized that a binding signature may take the form of any mark or designation thought proper by the party to be bound, "provided ... he intends to bind himself." *Sawtelle v. Ward-*

*well,* 56 Me. 146, 147 (1868). In the absence of any suggestion by the defendant that Gooding lacked authority to make the representations made in his e-mails or that he did not intend to bind the defendant, I conclude that his e-mails are sufficient under Maine law to meet the requirements of section 51, and a disputed issue of material fact thus remains for determination at trial. This conclusion is consistent with 15 U.S.C. § 7001, which provides in relevant part:

> Notwithstanding any statute, regulation, or other rule of law ... with respect to any transaction in or affecting interstate or foreign commerce—
>
> (1) a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form; and
>
> (2) a contract relating to such transaction may not be denied legal effect, validity, or enforceability solely because an electronic signature or electronic record was used in its formation.

15 U.S.C. § 7001(a).

It is accordingly unnecessary to consider the plaintiff's argument, Opposition at 12–13, to the effect that part performance takes the alleged agreement outside either statute of frauds.

**B. Termination of the Contract**

 The defendant contends that the plaintiff terminated any contract between the parties on November 19, 2001 and that it accordingly cannot be liable on any contract claim thereafter. In the alternative, it contends that it terminated the agreement on November 20, 2001 or in January 2002, Motion at 11–13. The plaintiff responds that issues of disputed fact remain

---

**12.** While neither party's statement of material facts includes evidence that Gooding was authorized to bind the defendant, such an inference may reasonably be drawn from the asserted facts.

with respect to termination of the contract, arguing without citation to authority that it did not terminate the contract and that the defendant was not justified in terminating the contract. Opposition at 15–16.

The plaintiff agrees that the alleged agreement "did not have a specific termination date and was not for a fixed duration." Defendant's SMF ¶ 4; Plaintiff's Responsive SMF ¶ 4. It agrees that Mann, its only representative involved in this case, wrote to Gooding on November 19, 2001 and stated, *inter alia:* "I have to assume that by your refusal to provide a letter of our agreement, you do realize it is over. Period. [T]oday for that matter, we are done." Defendant's SMF ¶ 23; Plaintiff's Responsive SMF ¶ 23. It also admits that Gooding wrote to Mann on November 21, 2001 "outlining the two e-mails that reflected Mann's termination of the parties' relationship and Robert Fiddes' [sic] acceptance of that termination." *Id.* ¶ 27. The plaintiff also agrees that it claims that the agreement was terminated by the defendant on January 18, 2002. *Id.* ¶ 34. The plaintiff's assertion that termination occurred on January 18, 2002 prevents it from claiming damages after that date and makes the plaintiff's contention that he did not intend to terminate the contract, Opposition at 15, relevant only to the period of time before that date. The only question remaining for resolution here is whether the alleged contract was actually terminated earlier, on November 19 or 21, 2001. Under Maine law, "courts will not interpret contracts as being of indefinite duration unless the agreement

expressly states that is the intention of the parties." *Bangor & Aroostook R.R. Co. v. Daigle,* 607 A.2d 533, 535 (Me.1992). Here, the summary judgment record establishes that it was the intention of the parties that the alleged contract have an indefinite duration. Such a contract is terminable at will. *See Burnell v. Town of Kingfield,* 686 A.2d 1072, 1074 (Me.1996) (citing with approval *R.J.N. Corp. v. Connelly Food Prods., Inc.,* 175 Ill.App.3d 655, 125 Ill.Dec. 108, 529 N.E.2d 1184, 1187 (1988), holding that a distributorship contract of indefinite duration is terminable at will). Thus, it appears from the evidence in the summary judgment record that the plaintiff admits that Mann terminated the alleged contract on November 19, 2001 and that the defendant accepted that termination. The facts in the summary judgment record also establish an anticipatory repudiation of the agreement by Mann on behalf of the plaintiff as that doctrine is defined in Maine law. *Wholesale Sand & Gravel, Inc. v. Decker,* 630 A.2d 710, 711 (Me.1993). The plaintiff's contention that it did not intend to repudiate the agreement as shown by Mann's subsequent e-mails is not effective because it has admitted that the defendant considered the repudiation to be final. Restatement (Second) of Contracts § 256 (2002), comment c.[13] The plaintiff may not recover damages for the defendant's alleged breach of contract for any time after November 19, 2001. This conclusion makes the plaintiff's claim for specific performance (Count II) unavailable as a remedy, and the defen-

---

**13.** The only evidence offered by the plaintiff to support its assertion that the defendant "continued to act as if the contract was still in effect" after November 19, 2001, Opposition at 16, is an exhibit to its memorandum of law that is not mentioned in its statement of material facts or in its response to the defendant's statement of material facts. The court will

not consider that exhibit. Local Rule 56(e). Even if this were not the case, the defendant would not have changed the effect of Mann's repudiation of the alleged agreement by urging the plaintiff to perform or to retract the repudiation. Restatement (Second) of Contracts § 257.

dant is entitled to summary judgment on that count.

## C. Breach of the Contract

 The defendant also argues, briefly, that the plaintiff breached the contract by failing to pay for goods shipped to it by the defendant between June and November 2001, and that this breach bars any breach of contract claim by the plaintiff. Motion at 10–11. The plaintiff does not respond directly to this argument. The defendant cites only sections of the UCC in support of its argument, *id.*, and the cited sections do not support its position. In general, only a breach of contract so material as to amount to a repudiation of the contract itself will bar the breaching party from recovering any damages from the other party when that party is also in breach. *E.g., Arrow Master, Inc. v. Unique Forming, Ltd.*, 12 F.3d 709, 714 (7th Cir.1993) (Illinois law); *see generally Down East Energy Corp. v. RMR, Inc.*, 697 A.2d 417, 421 (Me.1997). Here, the defendant asserts in conclusory fashion that the plaintiff's alleged failure to pay is a material breach, Motion at 11, but it does not identify any language in the alleged contract dealing with payment terms.[14] As a result, I am unable to determine whether the plaintiff's failure to pay was a material breach, and that issue must remain for determination at trial.

14. The defendant's claim in this regard also seems limited to a contention that Fiddes was relieved of "future performance," after the breach took place, Motion at 2, and in the absence of evidence of the date of the breach, summary judgment on this issue would not be available in any event.

15. The defendant makes no attempt to comply with 16 M.R.S.A. § 355, which provides a particular procedure for recovering on an account annexed. There is no suggestion in the statute that the prescribed manner is exclusive.

## D. Counterclaims

 The defendant seeks summary judgment on Counts I and II of its counterclaim, Motion at 1, which seek damages for breach of contract and payment on an account annexed,[15] Answer and Counterclaim (Docket No. 6), Counterclaim ¶¶ 13–20. It relies on the UCC to support its argument that the plaintiff received goods along with invoices, that the plaintiff did not reject the goods and that its right to payment accordingly is absolute. Motion at 14. The plaintiff responds that it revoked its acceptance of the goods in question and that the defendant is equitably estopped to recover on these claims. Opposition at 17.

With respect to the latter defense, the plaintiff asserts that the "[d]efendant's conduct in this matter, combined with defective product, and the flouting of U.S. laws and regulations, ... and the failure to observe the necessary protocol, must equitably estop Defendant from prevailing in its counterclaim." *Id.* These assertions are supported by a reference to paragraph 34 `of the plaintiff's statement of material facts, *id.*, which states, in its entirety, "The product lacks certification necessary to continue in U.S. commerce trade," Plaintiff's SMF ¶ 34.[16] The plaintiff cites only *Stearns v. Emery–Waterhouse Co.*, 596 A.2d 72 (Me.1991), in support of its argu-

16. The defendant asks this court to strike this paragraph of the plaintiff's statement of material facts on the ground, *inter alia*, that the affidavit of Mann cited in support does not demonstrate that Mann has the requisite personal knowledge and expertise to draw this conclusion. Defendant's Responsive SMF ¶ 34. While I do have serious doubts about the admissibility of the Mann affidavit on this point, it is not necessary, for the reasons stated in the following text of this opinion, for me to reach this issue.

ment. In that case, the Law Court expressly limited its holding: "We affirm that equitable estoppel, based upon a promisor's fraudulent conduct, can avoid application of the statute of frauds." *Id.* at 74. This holding provides no support for a claim that equitable estoppel can avoid liability on an account annexed or for goods delivered and accepted under the UCC. In addition, an assertion that the goods lacked certification required for sale in the United States in no way allows the drawing of an inference that the seller engaged in fraud. The plaintiff takes nothing by this argument.

■■■■■■ A seller may recovery at the summary judgment stage of an action on an account annexed if the court has before it copies of the invoices showing the balance due and that the materials covered by the invoices were sold to the buyer. *Sun Lumber v. Loiselle,* 593 A.2d 213, 214–15 (Me.1991). Here, as in *Sun Lumber, id.* at 215, the buyer does not deny the existence of a contract with the seller. My analysis accordingly begins with the premise that the defendant is entitled to recover on this claim.

Assuming *arguendo,* as the parties apparently do, that the terms of the UCC apply to the counterclaim based on the invoices, 11 M.R.S.A. § 2–607 provides that the buyer must pay at the contract rate for accepted goods and that acceptance of the goods precludes rejection. If the goods fail to conform to the contract, the buyer may reject all or any part of the goods. 11 M.R.S.A. § 2–601. However, revocation must occur within a reasonable time after the buyer discovers or should have discovered the ground for it, 11 M.R.S.A. §§ 2–602(1), 2–607(3)(a), 2–608(2). Here, the plaintiff asserts that it revoked its acceptance of the goods at issue, citing paragraph 32 of its statement of material facts, which simply makes that conclusory assertion. Plaintiff's SMF ¶ 32.[17] That assertion may not be accepted by the court due to its conclusory nature, *Hinchey v. NYNEX Corp.,* 144 F.3d 134, 144, 145 (1st Cir.1998), but, even if it were acceptable, the paragraph of Mann's affidavit cited in support, Affidavit of Larry Mann (Docket No. 31) ¶ 10, states that the plaintiff revoked acceptance "of all remaining Fiddes' product in [its] possession" on December 13, 2002. That affidavit also states that the product was shipped without appropriate documentation and certification, the only reason for revocation given by the plaintiff for which it even attempts to provide support in its statement of material facts, "throughout 2001" and that the plaintiff "confronted" Gooding on this issue "at the meeting in NY." *Id.* ¶ 7. The only meeting in New York to which the plaintiff's statement of material facts refers occurred in October 2001. Plaintiff's SMF ¶ 35. As a matter of law,[18] attempted revocation of acceptance more than a year after the plaintiff discovered

---

17. The plaintiff also asserts that the revocation "is based on 11 M.R.S.A. §§ 2–608, 2–314, 2–315, 2–316, as well as violation by Fiddes of multiple U.S. laws and regulations," citing only paragraph 34 of its statement of material facts. Opposition at 17. In the absence of any evidentiary support for the asserted application of sections 2–314, 2–315 and 2–316, I will not consider them. Paragraph 34 of the plaintiff's statement of material facts states, in its entirety: "The product lacks certification necessary to continue in U.S. commerce trade." Plaintiff's SMF ¶ 34.

The defendant, as noted above, has asked the court to strike this paragraph. Not only does the paragraph not support the assertion that Fiddes "violate[d] . . . multiple U.S. laws and regulations," but its conclusory nature makes it unacceptable as the basis for court action in the context of summary judgment. *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir. 1990).

18. While the question whether the elapsed time between delivery and revocation of acceptance was reasonable is "generally held to present questions of fact for the jury," there

the asserted basis for the revocation, and seven months after this action was filed, is untimely and thus ineffective. *Electrical Power Sys., Inc. v. Argo Int'l Corp.*, 864 F.Supp. 1080, 1084 (N.D.Okla.1994) (UCC § 2–602(1)—more than three months unreasonable); *International Minerals & Chem. Corp. v. Cotia Comercio Exportacao E Importacao S.A.*, 1985 WL 2308, at *3 (S.D.N.Y. Aug.9, 1985) (same); *Klockner, Inc. v. Federal Wire Mill Corp.*, 663 F.2d 1370, 1378–79 (7th Cir.1981)(UCC § 2–607(3)—eight months unreasonable); *Delta Tanning Corp. v. Samber Leather Fashions, Ltd.*, 654 F.Supp. 1285, 1287 (S.D.N.Y.1987) (UCC § 2–608(2)—six to seven months unreasonable).

The defendant is entitled to summary judgment on Counts I and II of its counterclaim. Because the remaining counts of the counterclaim appear to seek recovery of the same damages sought by Counts I and II, the defendant is ordered to show cause no later than ten days following the date of this opinion why those counts should not be dismissed.

## IV. Conclusion

For the foregoing reasons, the defendant's motion for summary judgment is **GRANTED** as to Count II of the complaint; **GRANTED** as to any damages sought in Count I that may have been incurred after November 19, 2001; **GRANTED** as to Counts I and II of the counterclaim; and otherwise **DENIED.** The defendant is further ordered to show cause no later than ten days from the date of this opinion why the remaining counts of the counterclaim should not be dismissed.

are exceptions to this rule. *Sherkate Sahami Khass Rapol v. Henry R. Jahn & Son, Inc.*, 701 F.2d 1049, 1051 (2d Cir.1983). One such exception occurs when the facts are not substantially in dispute, *Security Chimneys Ltd. v. McDowell,* 1992 WL 345073, at *5 (N.D.N.Y. Nov.16, 1992) (and cases cited therein), as is the case here.