EUGENE A. SIMPSON

*vs.*

FRED L. EMMONS, et al., and

SACO IMPROVEMENT COMPANY,

FIRST NATIONAL BANK of Biddeford,

and

YORK COUNTY SAVINGS BANK, Trustees.

York.    Opinion January 27, 1917.

*Breach of Contract. Damages Recoverable. Necessary Proof of Damages.*
*Rescinding of Contract. Acceptance of Offer as Constituting a Contract.*
*Necessary Proof where Party Claims Contract has been Rescinded.*

Action to recover damages for a breach of contract. The plaintiff submitted to the defendants a written offer to furnish them the iron work for a Shoe Factory. The defendants accepted the offer. Thereupon, the plaintiff wrote the defendants (October 23rd 1915) as follows: "When you were in my office to get an estimate on the Shoe Factory job you told me about some references. I have forgotten who they are. Will you kindly give me their names again? Upon referring to Dun's Commercial Agency, they advised me that they have not had any statement from you; therefore I should like to have you advise me as regarding the same. I have no doubt but that you would be willing to give me security in connection with this order, for, as you have no credit rating, it would not warrant my taking on such a large order as this for credit. Awaiting your favor I remain."

On receipt of that letter the defendants sent the plaintiff the following night lettergram. "When in your office I referred you to the First National Bank Biddeford. Did not ask credit under the circumstances you had better cancel the order and return the plans shall be in Boston Thursday and call at your office." Subsequently the defendants took the plans from the plaintiff's office and wholly refused to accept any of the material from him.

*Held:*

1. That the unqualified acceptance by the defendants of the plaintiff's definite offer constituted a contract between the parties.

2. That one party to a contract cannot rescind it without the assent of the other party, in the absence of fraud or breach of warranty.

3. That the refusal by one party to a contract to be bound by it, which will authorize the other party to rescind it, need not be an express refusal. It may be shown by acts and conduct, but such acts and conduct must clearly evince an intent to be no longer bound by the contract.

4. That the plaintiff's letter of October 23rd did not evince such a clear intention on his part not to be bound by the contract as would authorize the defendants to rescind it.

5. That the contract between the parties was not rescinded, and the evidence clearly shows a breach of it by the defendants.

6. That the damages are to be assessed in this case on the footing of what the plaintiff's profits would have been if the contract had not been broken by defendants; and the plaintiff is to be made whole for what he has lost by their breach.

7. That $375 is a fair and reasonable assessment of the net profits the plaintiff would have received from his contract with the defendants if they had not committed a breach of it.

8. That the plaintiff has failed to furnish sufficient data to enable the Court to determine with reasonable certainty the amount of any liability which he may have incurred for materials ordered by him of other parties to fill his contract with the defendants.

Action on the case to recover damages for breach of contract. The plaintiff claimed that he had agreed and contracted with defendant to furnish certain iron work and the defendants refused to accept same. Defendants pleaded general issue and also filed brief statement. At close of testimony, case was reported to Law Court for determination upon so much of the evidence as legally admissible. Judgment for plaintiff in the sum of three hundred and seventy-five dollars, with interest from the date of the writ.

Case stated in opinion.

*Stone & Stone, and Henry B. Roberts,* of Boston, for plaintiff.

*Robert B. Seidel,* for defendants.

SITTING: SAVAGE, C. J., CORNISH, KING, BIRD, HALEY, PHIL-
BROOK, JJ.

KING, J. Action to recover damages for a breach of contract.
The case comes up on report. The facts are not materially in dispute.
Briefly stated they are as follows: October 14, 1915, the plaintiff,
whose place of business was in Boston, submitted to the defendants
a written offer to furnish them the iron work for a Shoe Factory
at Saco, Maine, for $1,504.00. No question is raised as to the
sufficiency of the offer. It was specific and definite.

On Friday, October 22, 1915, the defendants wrote the plaintiff
as follows: "I accept your bid for iron work for Saco Improvement
Association except that I deduct $8.00 iron roof ladder, as it will not
be used. This is in accordance with your letter of October 14, 1915.
I have shipped you plans under separate cover. Rush the irons for
the first floor and send as soon as possible. Kindly send me schedule
so as I may be able to check upon their arrival."

Saturday the 23rd, after receipt of the acceptance, the plaintiff
wrote the defendants: "When you were in my office to get an esti-
mate on the Shoe Factory job you told me about some references.
I have forgotten who they are. Will you kindly give me their
names again? Upon referring to Dun's Commercial Agency, they
advised me that they have not had any statement from you; there-
fore I should like to have you advise me regarding the same. I have
no doubt but that you would be willing to give me security in con-
nection with this order, for, as you have no credit rating, it would not
warrant my taking on such a large order as this for credit. Await-
ing your favor I remain."

The defendants received that letter Monday night, the 25th, and
then sent to the plaintiff the following night lettergram. "When in
your office I referred you to the first National Bank Biddeford. Did
not ask for credit under the circumstances you had better cancel the
order and return the plans shall be in Boston Thursday and call at
your office."

On Tuesday, the 26th, the plaintiff replied to that lettergram: · "I
beg to acknowledge receipt of your telegram of this date and would
state that I did not hold up on your order, and did not mean any
offense by asking you for your financial rating. This is customary,
you understand, as a business precaution, and is one of the essential

things we have to look after.   This material has all been ordered and is about half out at the present time; therefore I cannot cancel your order; and I do not think that there will be any trouble in our getting together under pleasant business relations.   I hope that these conditions will be satisfactory to you."

Again on Wednesday the 27th the plaintiff wrote the defendants, that he had been informed that they had telephoned his office in regard to the order; that it was impossible to make cancellation on the material, because the greater part of it "is all made and will be shipped according to the order;" that the defendants will have to be responsible for the same; and that he had wired the factory to hold the material, if it had not already been shipped.

The defendant, Fred L. Emmons, called at the plaintiff's office in Boston, either on Wednesday the 27th or on Thursday the 28th, probably on Wednesday, and told the plaintiff's clerk, according to the latter's testimony, "that he considered the order cancelled, and had made other arrangements for the material, and that he would not accept any material that we would ship.  .  .  .   I told him that the order was underway, and that I could not accept his cancellation; I would have to leave the matter to Mr. Simpson."   At that time Mr. Emmons took the plans away with him from the plaintiff's office. He claims that he had not then received the plaintiff's letters of October 26 and 27.

November 5th 1915, the plaintiff wrote the defendants that they had not replied to his letter of October 27th in regard to the material, that it was all ready for shipment, was special material which he could not use on other work, and that they must make some arrangement to take care of it, otherwise he should hold them responsible.

It appears that on Saturday, October 23, 1915, having received the defendants' acceptance of his offer, the plaintiff wrote the Duplex Hanger Co., Cleveland, Ohio, inclosing schedule of material and asking for a lump price on same by wire; and that on Monday the 25th, having received such price by wire, he sent his order to the Duplex Company for the material with request "to hasten shipment of the bases and caps for the first story."   October 27, the Duplex Company wrote the plaintiff acknowledging receipt of his order and stating that "shipment of the first items of post caps and bases, as well as the hangers for the first floor, will be made to-day, and the balance of the order will go forward in a few days, as we have to make these

caps up. Tracer will be placed after this shipment so as to avoid any possible delay en route." On the same day, October 27, the plaintiff wired the Duplex Company, "Cancel Biddeford order. Letter in mail." And on the same day the Duplex Company wrote the plaintiff acknowledging receipt of his telegram and saying: "Practically all the post caps on this order have been sheared, and we expected to make shipment to-day of all the ten inch caps, as well as the bases. We are holding everything awaiting your letter. We hope, however, you will be able to induce them to take this material, as you realize that the caps were made special for this work."

*Liability of defendants.*

It is suggested in behalf of the defendants that inasmuch as they requested the plaintiff in their letter of acceptance of his offer to "rush the irons for the first floor and send as soon as possible," there was a variance between the acceptance and the offer, and, therefore, that there was not such a meeting of the minds of the parties as to all the terms of the contract as was essential to its consummation. We think there is no merit in the suggestion. That request of the plaintiff to rush the delivery of a part of the materials cannot be regarded as intended by the defendants as a condition affixed to their acceptance of the plaintiff's offer. The offer was accepted substantially as made, and without qualification or condition. And as nothing was stipulated in the offer as to time and manner of payment, the law implied that payment was to be made when the materials were delivered. It must be conceded, therefore, in accordance with well settled principles of law, that the unqualified acceptance by the defendants of the plaintiff's definite offer constituted a contract between the parties.

Nor can it be questioned that the defendants refused to perform that contract. They claim, however, that the contract was rescinded. To sustain that claim in the absence of fraud or breach of warranty on the part of the plaintiff, they must show that such rescission was expressly or impliedly assented to by the plaintiff, for it is obvious that one party to a contract cannot rescind it without the assent of the other. *Listman Mill Company* v. *Dufresne*, 111 Maine, 104. If one party to a contract in the absence of fraud or breach of warranty refuses to abide by it, that refusal undoubtedly will authorize the other party to renounce it and refuse longer to be bound by it. The refusal by one party to be bound by a contract, which will

authorize the other to rescind it, need not be an express refusal. It may be shown by acts and conduct, but such acts and conduct must evince an intention no longer to be bound by the contract. Lord Coleridge in *Freeth* v. *Burr*, L. R., 9 C. P., 208, states the rule thus: "In cases of this sort, where the question is whether the one party is set free by the action of the other, the real matter for consideration is whether the action or conduct of the one do or do not amount to an intention to abandon and altogether refuse performance of the contract. I say this in order to explain the ground upon which I think the decision in these cases must rest. There has been some conflict among them. But I think it may be taken that the fair result of them is as I have stated, viz, that the true question is whether the acts and conduct of the party evinces an intention no longer to be bound by the contract." And in 6 R. C. L., page 930, it is said: "It is the party's conduct evincing an intent to be no longer bound by the contract that is equivalent to consent to a rescission. Refusal to fulfil a contract must be absolute to be tantamount to an assent to its dissolution, and to authorize the other party to rescind it; such refusal must be in no way qualified, and should substantially amount to an avowed determination of the party not to abide by the contract."

The defendants contend that the plaintiff's letter to them of October 23rd was equivalent to a consent to a rescission of the contract which their acceptance of the plaintiff's offer had consummated, and that thereupon they rescinded it. In construing the letter the true question is whether the statements made therein evince an intention of the plaintiff to altogether refuse performance of the contract, and to be no longer bound by it.

The letter asks the defendants to again name the references they mentioned at the time the offer was made, and it reminds them that Dun's Commercial Agency had no statement of their financial standing, and asks to be advised regarding the same. It then states: "I have no doubt but that you would be willing to give me security in connection with this order, for, as you have no credit rating, it would not warrant my taking on such a large order as this for credit." We do not think that sentence can be properly construed as a request for security from the defendants without the giving of which the plaintiff would not perform the contract. It seems to us to be only a suggestion as to security followed by a reason in justification of the

suggestion. It was not we think equivalent to a demand for security without the giving of which the plaintiff would not perform his contract. And, therefore, we are of opinion that the letter did not authorize the defendants to rescind the contract.

But if it should be assumed that the defendants were justified in construing the plaintiff's letter of October 23rd as a refusal on his part to perform the contract unless they gave him security, and, therefore, that they were thereby authorized to rescind the contract, did they do so? Was their reply to the plaintiff's letter a refusal to abide by the contract? We think not. In it they named the reference previously given, stated that they did not ask for credit, and then said: "Under the circumstances you had better cancel the order and return the plans shall be in Boston Thursday and call at your office." It does not seem to us that the plaintiff was bound to understand from the defendant's lettergram that they claimed the right to rescind the contract and did therein actually rescind it; but, rather, that they were offended at his suggestion of security and then felt that it would be better under the circumstances to have the order cancelled, and accordingly gave him permission to cancel it.

Plainly the defendants were not authorized to rescind the contract later, at the time Mr. Emmons called at the plaintiff's office in Boston and repudiated it and took the plans away, for certainly they then had no reason to think that the plaintiff did not intend to perform the contract, on the contrary they were then informed that he was actually performing it.

Our conclusion, therefore, is that the contract between the parties was not rescinded, and that the defendants refused to perform it on their part.

*Damages.*

The damages are to be assessed in this case, we think, on the footing of what the plaintiff's profits would have been if the contract had been carried out by the defendants according to its terms, and the plaintiff is to be made whole for what he has lost by the defendants breach.

The plaintiff's business is contracting for iron and steel for structural work. He has no factory and apparently keeps no stock on hand, but fills the orders he secures by purchasing the materials of other concerns on the best terms obtainable. He introduced evidence tending to show that the difference between the contract price

for the defendants' order and the amount he would have been required to pay other concerns for furnishing him all the materials fitted to fill that order, is $425.30, and he claims that sum as the profit he would have made on his contract with the defendants. But that sum appears to represent the gross rather than the net profits of the contract, for it seems reasonable that the plaintiff would have incurred some expenses in fully performing the contract, which he did not incur in connection with it. And our conclusion is that $375 is a fair and reasonable assessment of the net profits the plaintiff would have received from his contract with the defendants if they had not committed a breach of it.

The plaintiff further claims that he incurred a liability to the Duplex Company for certain material which he ordered to fill his contract with the defendants, and that his damages recoverable in this action should include that liability. That claim is well founded in law, but after a painstaking study of all the evidence in the case the court is of opinion that the amount of any such liability of the plaintiff to the Duplex Company is not established.

The plaintiff himself did not undertake to specify the amount of that liability, but referred it to his clerk who testified that he determined it by assuming that the Duplex Company had fitted all the caps and bases ordered of it, and by estimating the cost of the same, less their value as scrap iron, to be "something like $389." But it appears, as already noted, that the plaintiff's order to the Duplex Company was received by it October 27, and that on the same day it acknowledged by letter his telegram to cancel it. And the only evidence in the case tending to show what the Duplex Company did in pursuance of the order is its statement in that letter that "Practically all the post caps have been sheared," and "that the caps were made special for this work." As to the use on other work of such of the caps and bases as were in fact fitted for this job, the plaintiff's clerk testified: "At least half of the caps are such that the girder is smaller than the post, and it might be some time before we could get a chance to use them again. Q. But it is possible. It is possible: but we haven't had occasion to since." Up to the time of the trial no bill or statement had been sent the plaintiff by the Duplex Company showing the amount of any liability from him to it in the premises. It is plain that the evidence does not show how many of the caps and bases were fitted by the Duplex Company. Nor does it

satisfactorily appear, we think, that such of the caps and bases as were fitted have no value other than for scrap iron.

The plaintiff apparently did incur some liability to the Duplex Company in his effort to fill the defendants' order, but we are constrained to the conclusion that he has not proved the amount of that liability.

*Judgment for the plaintiff for $375 with interest from the date of the writ.*