# United States Court of Appeals
## For the First Circuit

No. 03-2096
No. 03-2195

ROGER EDWARDS, LLC,

Plaintiff, Appellant/Cross-Appellee,

v.

FIDDES & SONS, LTD.,

Defendant, Appellee/Cross-Appellant.


APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. David M. Cohen, <u>U. S. Magistrate Judge</u>]


Before

Selya, <u>Circuit Judge</u>,
John R. Gibson,[*] <u>Senior Circuit Judge</u>,
and Howard, <u>Circuit Judge</u>.


<u>Thomas F. Hallett</u>, for plaintiff-appellant/cross-appellee.

<u>Ronald W. Schneider</u>, with whom <u>David A. Soley</u>, Bernstein, Shur, Sawyer & Nelson, was on brief, for defendant-appellee/cross-appellant.


November 1, 2004

[*]Hon. John R. Gibson, of the Eighth Circuit, sitting by designation.

**JOHN R. GIBSON**, <u>Senior Circuit Judge</u>.  Roger Edwards, LLC, appeals from a grant of summary judgment against it as to part of its contract suit against Fiddes & Son, Ltd., and judgment on a jury verdict against Edwards on the remaining issues.  Edwards contends that the Magistrate Judge[1] erred in entering partial summary judgment based on the Magistrate Judge's conclusion that the contract had been terminated by an e-mail from Edwards stating, "[I]t is over. . . [W]e are done"; Edwards contends that the e-mail was susceptible of more than one meaning and that there is a genuine issue of fact as to whether the contract was terminated by the e-mail.  Edwards also contends that the Magistrate Judge should have allowed Edwards to recover damages based on Fiddes's failure to give reasonable notice of termination.  Edwards further contends that the district court erred in rejecting Edwards's proposed anticipatory repudiation jury instruction.  We affirm.

Larry Mann is the owner of Roger Edwards, LLC, a Maine limited liability company.  Edwards had been distributing a furniture wax called "Briwax" since 1988.  In June 2000, Mann entered negotiations with Fiddes, a British wax manufacturer based in Cardiff, Wales, about becoming a distributor for Fiddes.  In e-mails exchanged from June to August 7, 2000, Mann and Fiddes's principal, Robert Fiddes Gooding, worked out a trial

---

[1]The suit was submitted to United States Magistrate Judge David M. Cohen, by the consent of the parties pursuant to 28 U.S.C. § 636(c).

distributorship agreement. The terms were never memorialized in one contract document, but must be gleaned from the exchange of lengthy e-mails. Mann asked for certain states as "protected territory." Gooding responded, "We would grant territorial rights to the 34 states as requested, with a periodic review rather based on both quantity sold and efforts extended. I would like to discuss this in greater detail with you. . . ." Mann urged Gooding to finalize the agreement, and Gooding responded, "I . . . am pleased to grant territorial rights to those states requested." On August 7, Mann e-mailed: "Sounds good—we have a deal." The parties stipulated that the agreement did not have a specified termination date and was not for a fixed duration.

Edwards began buying Fiddes products in September 2000. By November 2001, the relationship was beginning to fray, with Mann complaining about inadequate promotional literature and Fiddes complaining about unpaid invoices. Mann and Gooding met in New York in November, but relations did not improve. Mann wrote Fiddes that he suspected that Fiddes was not turning over to him "all Fiddes Supreme business of serious consequence," and Fiddes voiced its suspicions that Mann was selling his biggest customers Briwax instead of Fiddes Supreme.

On November 17, 2001, Mann wrote to Gooding asking for Gooding to give Mann a letter agreement to present to a banker in connection with Edwards's application for inventory financing.

(Mann later testified that the "banker" was Mann himself, and that he had walked back and forth between two chairs during the "conversation" reported in the e-mails.) Mann wrote to Gooding that the banker had advised him that "it could be worth a lot more taking you to court than following through with Fiddes Wood Care." Gooding did not send the requested "letter agreement," and on November 19, 2001 at 12:18 a.m., Mann wrote Gooding:

> I have to assume that by your refusal to provide a letter of our agreement, you do realize it is over. Period. [T]oday for that matter, we are done. We will be in a mode of recover our costs through all means we have including offset, clear out inventory we have and pursue litigation.

That same day at 9:21 a.m., Gooding responded:

> Your clear decision to revoke all official distribution rights for our range of wood finishing materials in the agreed 34 states is indeed disappointing, however not surprising. It has become evident from your recent correspondence that you had neither the financial means nor the intention to develop our business any further.

Two days later, after further e-mails from Mann requesting the letter for the "banker," Gooding sent Mann an e-mail that reproduced the two November 19 e-mails excerpted above and concluded: "We will not respond to any further requests concerning the above whilst the balance of your account remains unpaid."

Edwards brought suit in the state court of Maine for breach of contract and specific performance. The breach alleged

was stated in one simple paragraph:

> The Defendant has breached its agreement with the Plaintiff by bypassing the Defendant's distributorship in order to sell directly to end users within the 34 exclusive territorial states provided to Plaintiff, and/or by permitting other distributors to market and distribute Fiddes products within the Plaintiff's exclusive territory.

Fiddes removed the case to federal court and counterclaimed for amounts Edwards owed on unpaid invoices for Fiddes products.

Fiddes moved for summary judgment on the ground that if there was a contract, Edwards terminated it on November 19, 2001, and was not entitled to specific performance or to damages accruing after that date. The Magistrate Judge granted partial summary judgment based on Edwards's admissions of key facts stated in Fiddes's summary of undisputed facts. Roger Edwards, LLC v. Fiddes & Son, Ltd., 245 F. Supp. 2d 251, 261 (D. Me. 2003). Fiddes stated:

> 27. Robert Fiddes Gooding wrote to Larry Mann on November 21, 2001 outlining the two e-mails that reflected Mann's termination of the parties' relationship and Robert Fiddes' acceptance of that termination. (Plaintiff's Admissions, Exhibit AA, attached hereto at Tab 19, authenticated in Plaintiff's Admissions, at ¶ 38).

(Emphasis added.) The statement thus references a November 21 e-mail that in turn reproduced the two November 19 e-mails that Fiddes said terminated the contract. The Exhibit AA referred to in

-5-

the statement actually reproduces three e-mails, rather than two, but Exhibit AA does include two November 19 communications. In the first of these, at 12:18 a.m., Mann stated, "[I]t is over. Period. today [sic] for that matter, we're done." Goodings's response at 9:21 a.m. on the same day stated, "Your clear decision to revoke all official distribution rights. . . is indeed disappointing, however not surprising." Edwards admitted paragraph 27 of Fiddes's statement, which characterized the November 19 e-mails as "Mann's termination" and "Fiddes' acceptance of that termination."

Based on this admission, the Magistrate Judge held that Edwards terminated the contract on November 19, 2001, and Fiddes accepted the termination.[2] 245 F. Supp. 2d at 262. Accordingly, the Magistrate Judge held that Edwards could not recover damages that accrued after November 19, 2001, and Edwards was not entitled to specific performance. Id. at 262-63. However, the Magistrate Judge held that Edwards was entitled to trial on the issue of breach and damages before November 19. Id. at 263. The Magistrate Judge also held that Fiddes was entitled to summary judgment on Counts I and II of its counterclaim for the price of the Fiddes products sold to Edwards. Id. at 265.

At trial the jury answered special interrogatories. The jury found that "a contract existed between the plaintiff and the

---

[2]The Magistrate Judge concluded that the common law of Maine governed the distributorship contract, and the parties do not dispute this on appeal.

defendant granting the plaintiff the protected right to sell the defendant's products in 32[3] states" and that the defendant did not breach the contract. The Magistrate Judge entered judgment for Fiddes on the jury verdict and also entered judgment for Fiddes in the amount of $17,286 plus costs and interest on its counterclaim.

Edwards contends that the Magistrate Judge erred in entering partial summary judgment against it and in denying its requested anticipatory repudiation instruction. Fiddes cross-appealed, but its appeal is limited to an argument about what should happen on remand if we were to reverse.

## I.

We review the district court's grant of summary judgment de novo, construing the record in the light most favorable to the nonmoving party, giving the nonmoving party the benefit of all reasonable inferences. Nicolo v. Phillip Morris, Inc., 201 F.3d 29, 33 (1st Cir. 2000). Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions and affidavits on file show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "Conjectural allegations, conclusory assertions, and inconsequential evidence" do not suffice to establish a genuine issue of fact. Nicolo, 201 F.3d at 33.

---

[3]The parties' communications often refer to "34 states," but they miscounted. The correct number was 32.

Edwards contends that the Magistrate Judge erred in holding that Edwards had admitted that Mann terminated the contract on November 19 and that Fiddes accepted that termination. Edwards states: "Plaintiff made no such admission." The record shows Edwards did indeed make such an admission.

Edwards admitted paragraph No. 27 in Fiddes's statement of undisputed facts, which said that the November 21 e-mail set out two earlier e-mails "that reflected Mann's termination of the parties' relationship and Robert Fiddes' acceptance of that termination." (emphasis added). Paragraph No. 27 referenced Exhibit AA, which reproduced the Mann to Gooding e-mail of November 19 at 12:18 a.m. ("[I]t is over. Period.") and the Gooding to Mann e-mail of 9:21 a.m. Edwards does not point to any communication by it withdrawing the termination before Fiddes accepted it. Edwards's admissions thus establish that the two e-mails on the morning of November 19 terminated the contract. See Drinkwater v. Patten Realty Corp., 563 A.2d 772, 775 (Me. 1989) ("An agreement to rescind a contract is itself a contract . . . ."); Simpson v. Emmons, 99 A. 658, 660 (Me. 1917) (where one party to a contract repudiates it, the other party is authorized to rescind); Listman Mill Co. v. Dufresne, 88 A. 354, 355 (Me. 1913) (if one party's renunciation of an executory contract is accepted by the other party, the contract is rescinded). Edwards's position on appeal that Mann's words were "merely expressing frustration" is nothing

but an attempt to take back its earlier admission without forthrightly asking for such relief. The Magistrate Judge did not err in entering summary judgment on the basis of Edwards's admission. See Fed. R. Civ. P. 56(c) (authorizing entry of summary judgment based, inter alia, on admissions on file).

## II.

Edwards's next argument is that the Magistrate Judge erred in denying its requested anticipatory repudiation instruction. Edwards contends that Fiddes committed an anticipatory repudiation before November 19 by failing to provide the letter for the imaginary "banker." Edwards contends that by asking for a letter to give to a banker, Edwards was in effect asking for assurance of Fiddes's performance to which Edwards was entitled by law, and that Fiddes's failure to provide the letter thus amounted to an anticipatory repudiation of the contract.

A district court's refusal to give a particular requested instruction is reversible error only if the instruction proffered was a correct statement of the substantive law, which was not covered in the instructions given and which was integral to an important point in the case.[4] Faigin v. Kelly, 184 F.3d 67, 87

---

[4]Additionally, the party requesting the instruction must object after the jury has been charged but before it has retired to deliberate. Faigin v. Kelly, 184 F.3d 67, 87 (1st Cir. 1999); Fed. R. Civ. P. 51(c). The parties dispute whether Edwards preserved the objection; we need not delve into this question, because even if preserved, the point has no merit.

(1st Cir. 1999).  A district court may not refuse to instruct on an area of law central to the case merely because of technical defects in a proffered instruction, Febres v. Challenger Caribbean Corp., 214 F.3d 57, 64 n.7 (1st Cir. 2000), but a party that presents its legal theory to the court only in the form of a substantially flawed instruction "cannot fault the district court either for failing to separate wheat from chaff or for refusing to give the requested instruction," id. at 63.

> Edwards proffered an instruction stating:

> > "Anticipatory repudiation" or "anticipatory breach" of a contract exists where one party fails or refuses to comply with the terms of the contract.
> > If you determine that the defendant by its conduct anticipatorily repudiated or breached the contract, such conduct is in breach of the terms of the contract, and both discharges the obligation of the plaintiff, and allows the plaintiff to receive damages reasonably caused by the repudiation.

Under Maine law, "an anticipatory repudiation of a contract is 'a definite and unequivocal manifestation of intention on the part of the repudiator that he will not render the promised performance when the time fixed for it in the contract arrives.'" Wholesale Sand & Gravel, Inc. v. Decker, 630 A.2d 710, 711 (Me. 1993) (quoting 4 Corbin, Corbin on Contracts § 973 (1951)).  "The words or conduct evidencing [the anticipatory repudiation] must be definite, unequivocal, and absolute."  Id.  Moreover, the repudiation must concern obligations or promises going to the whole

-10-

consideration.  <u>Martell Bros.</u> v. <u>Donbury, Inc.</u>, 577 A.2d 334, 337 n.1 (Me. 1990).

Edwards argues that it was entitled to request and receive assurance of Fiddes's intent to perform and that failure to provide the assurance constituted anticipatory repudiation, but Edwards cites no authority governing when a party is entitled to assurance or what form the assurance must take.  Our own research shows that Maine has applied the Restatement (Second) of Contracts rule concerning requests for assurance of performance.  <u>Drinkwater</u> v. <u>Patten Realty Corp.</u>, 563 A.2d 772, 776 (Me. 1989) (applying Restatement (Second) of Contracts § 251).

Fiddes contends it was proper to deny the instruction because there was no evidence from which a jury could have concluded that Fiddes repudiated the contract.  It would be more accurate to say that the record includes admissions that demonstrate that the request for a letter was not a request for assurance of Fiddes's performance of the June-August 2000 contract. The trial record is clear that Mann never asked for a letter for himself, but instead wrote Gooding that the letter was for the "banker."  Mann sent Gooding a detailed e-mail about his conversation with the banker.[5]  The e-mail did not reveal that the

---

[5]Mann's e-mail said the banker asked Mann to call on Monday to get an appointment to see him, the banker insisted Mann should meet with him and a legal team who wanted to take his case "for free,"and the banker mentioned punitive damages and "approximately 1 million in 'Goodwill.'"

"banker" was Mann himself, when he was sitting in his other chair. A demand for assurance must be made in accord with the duty of good faith and fair dealing. Restatement (Second) of Contracts § 251, cmt. d; see id. § 205, cmt. a (referring to good faith as "honesty in fact").

Mann never supplied the terms he was asking Fiddes to agree to, instead putting the onus on Fiddes to reduce the parties' voluminous communications to something that would satisfy the "banker." See Mann to Fiddes, November 17, 2001 ("I was going to contact you with some of the details the letter must contain, but basically, it is exactly the same as we have been operating under. . . . So you know what it needs to say, yes??"). The record also shows that Gooding interpreted Mann's request as a demand for "a letter offering you exclusive distribution of our products into 34 states for the next two years." Mann's own trial testimony was that the letter was supposed to confirm a "new deal" discussed at a meeting between Gooding and Mann in New York in November 2001[6] involving making Edwards "the only importer of [Fiddes] wood finishing products into the United States within two years." Edwards also filed a Statement of Material Facts in Dispute stating that Mann's request for a letter "grew" out of the November meeting in New York. Similarly, in its brief opposing summary judgment,

---

[6]There is some confusion in the record as to whether the meeting occurred in October or November; the discrepancy is immaterial.

-12-

Edwards said, "[T]he request for a 'letter' was triggered by a separate deal under discussion.  That deal involved 'spray wax,' and machinery, which was a huge new and additional undertaking . . . It is for that reason that a letter was requested subsequent to the October [sic], 2001 meeting."  It is undisputed that the contract memorialized in the June-August 2000 e-mails did not include a two-year term or an exclusive distributorship.  Therefore, Edwards has represented to the court that Mann was asking for something different from assurance that Fiddes would perform under the June-August 2000 contract.

Moreover, Edwards's theory was only presented to the court in the form of a proposed instruction with substantial legal errors.  Edwards's complaint pleaded breach of the distributorship contract by Fiddes selling into the territory, but did not mention a repudiation theory or a request for assurance of performance.  Neither Mann's affidavit in opposition to summary judgment nor his summary judgment brief mentioned this theory.  Edwards mentioned in interrogatory answers that Fiddes "withheld" a letter, but Edwards did not characterize the incident as denial of a request for assurance or otherwise explain why Fiddes would be obliged to supply such a letter.  Edwards introduced its theory of repudiation-by-failure-to-provide-assurance in argument during the trial.

The instruction Edwards presented entirely omitted the

concepts that the anticipatory repudiation must be definite and unequivocal, that anticipatory repudiation occurs in advance of the time fixed for performance, and that the repudiation must go to the whole of the consideration.  The instruction did not discuss the possibility of repudiation by failure to provide assurance.  The instruction as proffered describes an ordinary breach, not an anticipatory repudiation.  It states tautologically that if the defendant breached the contract, this conduct was in breach of the contract.  Thus, the instruction proffered was both inaccurate and misleadingly incomplete.

The court gave another, general instruction concerning breach of contract, to which Edwards did not object.  Having given a general instruction on breach of contract, the Magistrate Judge had no further obligation to piece together an unpleaded theory that Edwards had only hinted at by proposing a defective instruction.  "It is hornbook law that a trial court does not commit error when it instructs generally about a legal principle and then declines a party's request for a further instruction that is misleading, legally incorrect, or incomplete." Febres, 214 F.3d at 63.

### III.

Finally, Edwards argues that the Magistrate Judge erred in holding that because Edwards contended the contract was terminated on January 18, 2002, Edwards could not claim lost

profits after that date.  <u>See</u> 245 F. Supp. 2d at 262.  This point is moot, since the Magistrate Judge held immediately afterwards that Edwards terminated the contract earlier than January 18, 2002 (on November 19, 2001) and Fiddes accepted the termination.  <u>Id.</u> Edwards cannot argue that it is entitled to lost profits on account of Fiddes's failure to give it reasonable notice of termination, since Edwards, not Fiddes, terminated the contract.  Nor can Edwards argue that it lost profits after January 18, 2002, resulting from a breach committed by Fiddes before November 19, 2001, since the jury found Fiddes did not breach the contract.

We therefore put this litigation to a well-deserved rest.

The judgment in No. 03-2096 is <u>affirmed</u> and No. 03-2195 is <u>dismissed</u> as moot.  Costs shall be taxed in favor of defendant-appellee/cross-appellant.