# United States Court of Appeals
## For the First Circuit

No. 05-1306

ROGER EDWARDS, LLC,

Plaintiff, Appellant,

v.

FIDDES & SON LTD.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. David M. Cohen, U.S. Magistrate Judge]

Before

Boudin, Chief Judge,
Selya, Circuit Judge,
Siler,* Senior Circuit Judge.

Thomas F. Hallett with whom Thomas F. Hallett Law Offices, P.A. was on brief for appellant.
Ronald W. Schneider, Jr. with whom David A. Soley and Bernstein, Shur, Sawyer & Nelson were on brief for appellee.

October 31, 2005

---

*Of the Sixth Circuit, sitting by designation.

**BOUDIN**, <u>Chief Judge</u>.  In the district court, plaintiff-appellant Roger Edwards, LLC ("Roger Edwards"), a Maine limited liability company, sought to undo a previous defeat, <u>see</u> <u>Roger Edwards, LLC</u> v. <u>Fiddes & Sons, Ltd.</u>, 387 F.3d 90 (1st Cir. 2004), by alleging fraudulent conduct on the part of defendant-appellee Fiddes & Son, Ltd. ("Fiddes"), a British corporation.  The district court denied Roger Edwards' motion under Fed. R. Civ. P. 60(b) for relief from the original judgment.  Roger Edwards then filed this new appeal.  The background events follow.

Roger Edwards is a distributor of wax products (primarily furniture wax).  Fiddes manufactures such products, some of which are imported into this country.  On March 14, 2002, Roger Edwards filed a complaint in a Maine state court claiming that Fiddes breached the terms of an alleged distribution agreement between the parties by selling its wax products directly into Roger Edwards' "protected territory" or allowing others to do so.  Fiddes removed to federal court, invoking diversity jurisdiction.

Fiddes then defended against Roger Edwards' claim by arguing that there was no contract between the two parties or, in the alternative, that if there were a contract Fiddes did not breach it and it had been terminated.  Fiddes also counterclaimed for amounts owed to it on unpaid invoices; Roger Edwards defended against Fiddes' counterclaim by arguing that it had revoked

acceptance of the invoiced goods in December 2002 because of "violation by Fiddes of multiple U.S. laws and regulations."

After extensive discovery, the magistrate judge (presiding over the case with the consent of the parties, see 28 U.S.C. § 636(c) (2000)) granted partial summary judgment to Fiddes on February 14, 2003. The judge ruled that if there were a dealership agreement (a question left for the jury), Roger Edwards had terminated it on November 19, 2001, and Fiddes had acquiesced in the termination. The magistrate judge also granted summary judgment to Fiddes on its counterclaim for unpaid invoices for past deliveries: he found that Roger Edwards' "attempted revocation of acceptance more than a year after the plaintiff discovered the asserted basis for the revocation, and seven months after this action was filed, is untimely and thus ineffective."

This disposition left open Roger Edwards' breach of contract claim for the period prior to the November 19, 2001, termination. A second grant of partial summary judgment in favor of Fiddes shortly before trial in July 2003 sharply limited Roger Edwards' possible theories of recovery as to this claim. Ultimately, the jury found after trial that an agreement had existed between the parties but that Fiddes had not breached it. Judgment was entered in favor of Fiddes on its counterclaim for $17,286 plus interest and costs.

Roger Edwards appealed certain aspects of the judgment (but not the partial summary judgment against it on Fiddes' counterclaim).  This court affirmed, saying--with misplaced optimism--that it was "put[ting] this litigation to a well-deserved rest."  Roger Edwards, 387 F.3d at 97.  While the original appeal was pending, Roger Edwards filed a Rule 60(b) motion seeking relief from the judgment on grounds of fraud.  After our affirmance, the magistrate judge denied the motion, prompting the new appeal by Roger Edwards that is now before us.[1]

Nominally, the standard of review for decisions granting or denying Rule 60(b) motions is abuse of discretion.  United States v. $23,000 in U.S. Currency, 356 F.3d 157, 165 (1st Cir. 2004); Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 19 (1st Cir. 1992); Anderson v. Cryovac, Inc., 862 F.2d 910, 923 (1st Cir. 1988).  But in practice this means de novo review on issues of abstract law and clear error as to fact findings, deferential review associated with the phrase "abuse of discretion" otherwise being reserved for what might be termed judgment calls (e.g., law application, procedural rulings).[2]

---

[1]The magistrate judge also imposed sanctions on Roger Edwards' counsel for making the motion, which are the subject of a separate appeal not now before this court.  A separate motion, which we will decide later, seeks sanctions for the filing of the present appeal.

[2]In its reply brief, Roger Edwards interprets one statement in a First Circuit case as suggesting that our review under Rule

Rule 60(b) permits a district court to reopen a final judgment for any of six stated reasons, two of which were invoked by Roger Edwards: (3) "fraud . . . , misrepresentation, or other misconduct of an adverse party" and (6) "any other reason justifying relief," a catchall sometimes taken to include what is called "fraud on the court."  Whatever the precise quality or quantity of misconduct needed to constitute "fraud on the court," it is not remotely present in this case so we need not consider whether, if it were, it would be properly presented under subsection (3) or subsection (6) or both.  Compare Simon v. Navon, 116 F.3d 1, 2 (1st Cir. 1997), with United States v. Parcel of Land and Residence at 18 Oakwood Street, Dorchester, Mass., 958 F.2d 1, 5 (1st Cir. 1992).

The usual reason why litigants urge that their claim is one for "fraud on the court," and arises under Rule 60(b)(6), is that if both conditions are satisfied, the claim is not subject to the one-year limit applicable to ordinary fraud claims under Rule 60(b)(3).  Here, however, Roger Edwards brought its motion within one year of the challenged judgment, so it need not have invoked fraud on the court for purposes of avoiding the one-year time limit.  Instead, Roger Edwards argues that the showings of

---

60(b)(6) is entirely plenary, see Simon v. Navon, 116 F.3d 1, 2 (1st Cir. 1997), but such a suggestion is at odds with ample precedent (examples are cited in text), and in any event the Simon court was engaging in review of purely legal issues.

prejudice and diligence that the courts have required of Rule 60(b)(3) fraud claims either do not apply in the case of fraud on the court or are at least ameliorated.

The leading discussion of the "fraud on the court" concept appears in Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), in which the Court upheld an independent action to set aside a prior judgment; the prior judgment assumed the validity of a patent that had been secured by a complex fraudulent scheme involving manipulation of the patent office by a lawyer. Id. at 240-42, 249-50. Using the concept as a ground for relief under Rule 60(b) itself, primarily to avoid the one-year limitations period, has been a creature of circuit case law, e.g., Parcel of Land and Residence at 18 Oakwood Street, 958 F.2d at 5, and may have created more trouble than it was worth.

The cases have struggled, usually without great success, to provide a useful definition of "fraud on the court." One common version, drawn in part from language in Hazel-Atlas, refers to "an 'unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter' involving an officer of the court." Geo. P. Reintjes Co. v. Riley Stoker Corp., 71 F.3d 44, 48 n.5 (1st Cir. 1995) (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989)). More usefully, in Reintjes we said that "perjury alone . . . has never been

sufficient."  Id. at 49; see also Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2870, at 419-20 (1995).

In any event, "[t]he cases in which it has been found that there was, or might have been, a 'fraud upon the court,' for the most part, have been cases in which there was 'the most egregious conduct involving a corruption of the judicial process itself.'"  Wright, Miller & Kane § 2870, at 418.  Wright, Miller and Kane give as examples the "bribery of a judge" or the use of counsel to exert improper personal influence on the court.  Id. at 418-19.  The quoted language and these examples capture the severity of the conduct needed to escape the limitations deliberately imposed on ordinary motions to obtain relief under Rule 60(b)(3).

None of the statements or omissions alleged by Roger Edwards in the present case remotely involves "an unconscionable scheme" or "the most egregious conduct" designed to corrupt the judicial process.  As we will see, some of the statements or omissions have nothing to do with the judicial process at all, and the balance would be at most the routine stuff of claims under Rule 60(b)(3) and are weak examples even of that.  Nothing more need be said about "fraud on the court" or Rule 60(b)(6).  We turn now to the statements and conduct assailed by Roger Edwards, to consider how they may fare under Rule 60(b)(3).

The basis for Roger Edwards' several Rule 60(b) fraud claims was Fiddes' allegedly fraudulent product labeling and certification practices. Roger Edwards attached to its Rule 60(b) motion an expert affidavit attesting that Fiddes had consistently mislabeled and "fraudulently certified" products sold to Roger Edwards; Fiddes' failure to disclose the defects was, according to Roger Edwards, a species of fraud warranting relief under Rule 60(b)(3). The balance of Roger Edwards' Rule 60(b) motion focused on three specific alleged misrepresentations made by Fiddes during the course of the litigation--misrepresentations made, according to Roger Edwards, to further conceal Fiddes' fraudulent labeling and certification practices.

In parsing Rule 60(b)(3), an initial, and important, distinction to grasp is between fraud or misstatements that are committed during the course of a commercial transaction (such as a false statement about the quality of goods being sold), and fraud or misstatements perpetrated in the course of litigation (such as perjury of a witness or the introduction of a false document into evidence). The former is the subject-matter of litigation, meant to be investigated through the discovery process and resolved by the evidence at trial. True, within one year of final judgment a litigant may move to reopen the judgment for newly discovered evidence, Fed. R. Civ. P. 60(b)(2), but only if the evidence could not have been discovered through the exercise of due diligence,

id.; Lepore v. Vidockler, 792 F.2d 272, 274 (1st Cir. 1986), and the new evidence "would probably have changed the outcome," Hoult v. Hoult, 57 F.3d 1, 6 (1st Cir. 1995). Roger Edwards did not invoke this exception.

By contrast, fraud perpetrated in the course of litigation interferes with the process of adjudication, and it is this kind of litigation-related fraud that principally concerns Rule 60(b)(3)'s fraud provision. Once such fraud is proved, the judgment may be set aside merely upon the movant's showing that the fraud "'substantially interfered with [the movant's] ability fully and fairly to prepare for, and proceed at, trial.'" Tiller v. Baghdady, 294 F.3d 277, 280 (1st Cir. 2002) (quoting Anderson, 862 F.2d at 926). This is a far less demanding burden than showing that a different result would probably have ensued.

The case law under Rule 60(b)(3) does not often articulate this distinction between "out of court" conduct and trial-related conduct. But the vast bulk of reported fraud cases under Rule 60(b), whether under subsection (3) or (6), involve fraud or misstatements perpetrated in the course of litigation or other misconduct aimed directly at the trial process; those few litigants who seek to utilize Rule 60(b) fraud motions to redress non-litigation conduct are typically rebuffed at the threshold.

A good example of the latter is Optimal Health Care Servs., Inc. v. Travelers Ins. Co., 801 F. Supp. 1558, 1561 (E.D.

Tex. 1992), where a Texas district court declared that to allow a Rule 60(b)(3) fraud claim on the basis of "the fraud underlying [the plaintiffs'] claim" would "impermissibly give those plaintiffs a second bite at the apple."  And where treatises describe the kind of conduct that permits a Rule 60(b) fraud motion to reopen a judgment, they ordinarily identify conduct such as perjury, forged evidentiary documents, or bribery of judge or jury as paradigmatic grounds for such motions, with no mention of non-litigation-related conduct.  E.g., James & Hazard, Civil Procedure § 12.14, at 678 (3d ed. 1985).[3]

Roger Edwards' allegations of mislabeling or inadequate certifications, trumpeted in its expert affidavit, relate to the commercial conduct of Fiddes.  As Roger Edwards points out, there are complex regulations bearing both on importing and distributing products like the waxing materials sold by Fiddes; it would not be surprising if there were small deviations from the regulations, and perhaps large ones.  Proving them might have assisted Roger Edwards in pursuing its claims and defenses, but it was Roger Edwards' obligation to use discovery to seek out such before or during the litigation.

---

[3]Some conduct may straddle the line.  Cf.  Jordan v. Paccar, Inc., 97 F.3d 1452 (table), 1996 WL 528950, at **10 (6th Cir. Sept. 17, 1996) (per curiam) (unpublished opinion) (hypothesizing that "a one-week document retention policy for information relating to products liability litigation would obviously constitute 'other misconduct' within the meaning of Rule 60(b)(3)").

Roger Edwards devotes much of its brief on appeal to arguing that it could not have unearthed the alleged deficiencies in labeling or certification prior to trial. We see no reason why not; obviously it had the labels, and the same expert could easily have been retained prior to trial. In any event, we do not regard newly discovered instances of commercial wrongdoing as encompassed by Rule 60(b)(3); if useful at trial, such episodes must be unearthed by discovery or presented after trial under the stringent conditions of Rule 60(b)(2), which Roger Edwards does not claim to have satisfied.

We turn now to the three specific alleged false statements that were made in the course of litigation (or in one case at least arguably so) and thus are possible candidates under Rule 60(b)(3). To set aside a verdict for fraud under Rule 60(b)(3), a litigant must "present the district court with 'clear and convincing evidence' that the claimed fraud . . . occurred," Tiller, 294 F.3d at 280 (citing Anderson, 862 F.2d at 926)--that is, that the statement was made and was fraudulent--and prove that any alleged fraud "'substantially interfered with [the litigant's] ability fully and fairly to prepare for, and proceed at, trial,'" id. (quoting Anderson, 862 F.2d at 926). We begin with the first two allegedly false statements, which are closely related.

Under Maine law a buyer can in certain limited circumstances revoke its acceptance of goods already sold and

delivered to it.  Me. Rev. Stat. Ann. tit. 11, § 2-608 (West 2005).

To defeat Fiddes' counterclaim for payment with respect to goods delivered, Roger Edwards' counsel wrote Fiddes on December 13, 2002, saying that Roger Edwards had "recently found considerable evidence of nonconformity to US law" with respect to "all Fiddes products" purchased by Roger Edwards and that Roger Edwards revoked its acceptance of those products on grounds of product defects and Fiddes' misrepresentations.

Fiddes replied on December 16, rejecting the "attempted revocation" as "unreasonably late and without any basis"; it also denied generally that it or its products were in violation of any laws.  This general denial is now claimed by Roger Edwards to be a fraudulent "misrepresentation . . . of an adverse party" warranting relief under Rule 60(b)(3).  In other words, Roger Edwards asserts that this formal denial (that Fiddes or its products were in violation of law) was both fraudulent and that it substantially interfered with the presentation of Roger Edwards' case.

The second allegedly fraudulent statement echoes the first.  Roger Edwards, in opposing Fiddes' first motion for summary judgment, submitted a statement of material facts in December 2002, see D. Me. R. 56(c), maintaining that it had withdrawn its acceptance of the delivered goods and asserting that "[t]he product" lacked certification for U.S. trade, a point elaborated

upon in a Roger Edwards affidavit. Fiddes replied in its own filing in January 2003 by stating among other things:

> The Defendant qualifies the Plaintiff's [Statement of Material Facts] ¶ 34 by stating that Fiddes expressed its refusal to recognize the Plaintiff's attempt at revocation and confirmed that Fiddes' goods complied with U.S. laws.

Roger Edwards argues that but for the allegedly false statements of compliance by Fiddes in its December 2002 letter and January 2003 court papers, Roger Edwards would not have withdrawn its revocation of acceptance defense (supposedly in March 2003). But in denying the Rule 60(b) motion, the magistrate judge reiterated his original ruling that the December 2002 revocation was itself too late as a matter of law. On that premise, the subsequent withdrawal of the revocation was irrelevant.[4]

Roger Edwards also implies that the December 2002 and the January 2003 statements deterred it from asserting other possible claims or defenses by, for example, forestalling discovery into other possible claims. But the discovery period, having ended in October 2002, was long over by the time these alleged misstatements were made. To warrant a serious inference that the case would have

---

[4]Roger Edwards could have contested the magistrate judge's premise that December 2002 was too late to revoke acceptance, but it did not do so on the original appeal after the ruling was first made, and to the extent it has raised the issue in the form of an equitable estoppel argument in this appeal, this argument is forfeit, having been omitted from the original Rule 60(b) motion. See Daigle v. Me. Med. Ctr., 14 F.3d 684, 687-88 (1st Cir. 1994).

proceeded differently but for the statements at issue, something far more specific and telling is required than general speculation.

Roger Edwards lastly invokes a case-law presumption that a purposefully fraudulent statement interferes with litigation, <u>Anderson</u>, 862 F.2d at 926. But putting aside the lack of "clear and convincing evidence" of fraud, any such presumption can be overcome by "a clear and convincing demonstration" that the statement in fact <u>had</u> no impact upon the litigation. <u>Id.</u> This is just what the magistrate judge found in this case as to the first two statements. We have been given no sound reason to disagree.

Although we need not resolve the issue, it would be difficult to attach the label "fraud" to either of these two statements. Whether "true" or not, they are the kind of bland denials that the law was violated that would not be relied upon by any serious adversary. Roger Edwards did not accept the statements as true, but forged ahead with its revocation defense, only withdrawing revocation, if its briefs are to be credited, after it lost the summary judgment motion on Fiddes' counterclaim in February 2003. In any event, Roger Edwards has made no plausible argument that either statement, even if "fraudulent," "'substantially interfered with [its] ability fully and fairly to prepare for, and proceed at, trial.'" <u>Tiller</u>, 294 F.3d at 280 (quoting <u>Anderson</u>, 862 F.2d at 926).

-14-

Fiddes made the third allegedly fraudulent set of statements in June 2003, when shortly before trial it filed a second motion for summary judgment, occasioned by a then-recent computation of damages proffered by Roger Edwards in the pretrial process. This computation, addressed to Roger Edwards' claims then scheduled for trial, sought million-dollar damages for lost profits, services rendered, set-up and start-up costs, goodwill, and product storage and disposal costs caused "by improper labeling, documentation and unsellable product."

In support of its second motion, Fiddes argued inter alia that Roger Edwards (1) could not recover storage and disposal costs because it had accepted the goods; (2) had not made a timely revocation "assuming for the sake of argument that [the product] was defective"; and (3) as "the importer" had been responsible under U.S. law for ensuring that the goods met the requirements for admissibility. Roger Edwards claimed in its Rule 60(b) motion that these arguments amounted to a third fraudulent statement.

The first statement is merely a conclusion, and the second assumes arguendo a product defect rather than denies it. On appeal, Roger Edwards focuses upon the third assertion, namely, that Roger Edwards, as the "importer" of the product, had to make sure that the product was compliant. Whatever the accuracy of this pronouncement, it is in essence the assertion of a legal position, and Roger Edwards' counsel was free to consult the law books and

-15-

(subject, of course, to the strictures of Fed. R. Civ. P. 11) assert the contrary. Statements of this kind are not what Rule 60(b)(3) means by "fraud . . . or misstatement."

Finally, Roger Edwards cites <u>United States</u> v. <u>Baus</u>, 834 F.2d 1114 (1st Cir. 1987), for the view that its allegations of fraud and impact on the litigation should be accepted as true by this court and reviewed only for their legal sufficiency for purposes of determining whether the lower court erred in denying its request for discovery and for an evidentiary hearing in connection with the Rule 60(b) motion. <u>Baus</u> dealt with "uncontested" allegations, <u>id.</u> at 1122; there is no requirement under Rule 60(b) that contested allegations automatically get an evidentiary hearing regardless of plausibility or import. Even apart from the latitude allowed to the trial judge in such matters, <u>see</u> <u>Pearson</u> v. <u>First N.H. Mortgage Corp.</u>, 200 F.3d 30, 35 (1st Cir. 1999), Roger Edwards points to nothing in this case that could be unearthed by discovery or proved in an evidentiary hearing that would alter our analysis.

<u>Affirmed</u>.